Edward Allen LeVay, Jr. v. Commissioner.
Le Vay v. Commissioner
Docket No. 71227.
United States Tax Court
T.C. Memo 1960-263; 1960 Tax Ct. Memo LEXIS 27; 19 T.C.M. (CCH) 1475; T.C.M. (RIA) 60263; December 8, 1960
Edward A. LeVay, Jr., pro se, 79 Wall Street, New York, N. Y. Jules W. Breslow, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in petitioner's income tax for 1955 of $1,445.35. By amended answer respondent claimed additional deficiencies in income tax of $198.93, arising from a mathematical error, and additions to tax under section 6651(a), I.R.C. 1954, and section 6654, I.R.C. 1954, in the respective amounts of $411.07 and $46, respectively. Petitioner did not reply to this answer. *28 Upon timely motion by respondent the Court entered an order that "the affirmative allegations in respondent's answer as amended are deemed admitted." The issues remaining are: (1) Whether notes received in 1955, in consideration of services rendered, constituted taxable income to petitioner; and if so, whether these notes became worthless in 1955 and constituted deductible bad debts; (2) whether in 1955 a portion of "other deductions" totaling $1,825.86 represented ordinary and necessary business expenses for that year. Findings of Fact The stipulated facts are found. In 1955, petitioner Edward Allen LeVay, Jr., hereinafter called petitioner, was a member of a partnership doing business as E. A. LeVay & Co., hereinafter called the partnership, in New York City. The partnership engaged in a general brokerage business. It acted as an agent in the sale and merger of business enterprises. Petitioner and his father were its partners. The father's investment was $1.00. Petitioner did not file an individual income tax return, Form 1040, for 1955. He filed a 1955 partnership return, Form 1065, for the partnership with the district director of internal revenue, Lower Manhattan, New *29 York. During 1955, petitioner maintained his records and filed the partnership's return on the cash method of accounting. In 1955, petitioner, on behalf of the partnership, sold a company in Providence, Rhode Island to a company in Brooklyn, New York. On December 6, 1955, in consideration for these services, petitioner received 9 notes, payable to the partnership and dated November 15, 1955,as follows: Note number
Time payable
Amount
1
On demand
$1,000
2
12-28-55
500
3
1-28-56
500
4
2-28-56
500
5
3-28-56
500
6
4-28-56
500
7
5-28-56
500
8
6-28-56
500
9
7-28-56
500
Total
$5,000 In the place provided for the drawer-maker there appeared on each note the following: ROBERTS BUSINESSES By /s/ Andrew G. Doukas ROBERTS NUMBERING MACHINE CO., INC.
By /s/ Andrew G. Doukas, Secretary-Treasurer Roberts Businesses was a corporation. Each note was made payable at the First National City Bank, Homestead Branch. On the reverse side of notes No. 1 and 2 there appeared the following stamped notations: Credited to the Account of the Within Named Payee Absence of Endorsement Guaranteed The Chase Manhattan Bank RECEIVED PAYMENT *30 Prior Endorsements Guaranteed, DEC 28 1955 THE CHASE MANHATTAN BANK, New York, N. Y., City Collection Dept. At an undisclosed time these notations were stamped over with the words "Endorsement Cancelled." Petitioner endorsed without recourse notes No. 3 through 9 to the order of third parties. These notes were stamped as received for collection as follows: Note Number
Approximate date
3
February
1956
4
February 1956
5
March
1956
6
June
1956
7
June 1956
8
June
1956
9
July
1956
On or about December 28, 1955, notes No. 1 and 2 were presented to the bank for payment. Payment was refused. In 1956, notes No. 3 through 9 were presented to the bank for payment. Each of these notes was marked "Payment Stopped." In the latter part of December 1955, there was a group fighting for control of Roberts Numbering Machine Co., Inc. Between December 24, 1955 and December 29, 1955, Andrew G. Doukas was forced from this company. A new group acquired control of the Roberts Numbering Machine Co., Inc., and disavowed everything the previous management had transacted, including the notes payable to the partnership. In 1956, petitioner brought an *31 action against the makers of these notes. In 1957, petitioner received in cash approximately $2,500. He reported this amount as income for 1957. The partnership's return for 1955 reported gross income, deductions and ordinary income (or loss) [1] as follows: Item
Amount
Gross income
$8,787.04
Deductions: Salaries and wages
$1,264.84
Rent
867.50
Bad debts
4,999.00
Depreciation
45.00
Other deductions
1,825.86
9,002.20
Ordinary income (or loss)
($975.08) The 9 notes totaling $5,000 were reported as part of the partnership's gross income. The reported bad debt deduction represented that amount of these notes which petitioner determined as worthless. The entire income, if any, of the partnership was taxable to petitioner. In his deficiency notice, respondent disallowed the following reported deductions: Salary and wages
$1,264.84
Bad debts
4,999.00
Depreciation
45.00
Other deductions
1,825.86
Total
$8,134.70
At the trial, the parties stipulated in writing and orally allowable *32 business expenses in 1955, as follows: Item
Amount
Salary and wages
$1,264.84
Salary
72.60
Advertising
321.25
Advertising
76.00
Telephone and telegraph
296.01
Telephone
15.85
Stationery and printing
460.47
Total
$2,507.02 On brief, respondent concedes additional allowable business expenses in 1955, as follows: Item
Amount
Depreciation
$ 45.00
Postage
105.67
Total
$150.67
The notes received by the partnership during the taxable year were not the equivalent of cash and had no ascertainable fair market value. Opinion Disallowance of the miscellaneous expenses not agreed upon by the parties must be approved. Petitioner has not introduced evidence which overcomes the prima facie correctness of the determination. But as for the notes in controversy, the only item petitioner contests seriously on brief, we think he must be sustained because they should never have been included as partnership income in the first place. Viewing the record as a whole, the only justifiable inference is that during 1955 these notes, entirely unsecured and non-interest-bearing, see Jay A. Williams, 28 T.C. 1000, were not equivalent to *33 cash and had no ascertainable fair market value. They were hence not properly includible in the income of a cash basis taxpayer. K. E. Merren, 18 B.T.A. 156, 159, affirmed on other grounds (C.A. 5) 51 F. 2d 44; R. V. Board, 18 B.T.A. 650, 654; Virginia W. Stettinius Dudley, 32 T.C. 564, 590, affirmed per curiam (C.A. 2) 279 F. 2d 219. Respondent's argument that an exclusion from income, as distinguished from the disallowance of a deduction, was not pleaded raises a more difficult question. But while the pleadings may not be as carefully drawn as one might desire, a fair interpretation of the allegations in the petition, [2] drawn by petitioner who is not a lawyer, is that this issue has been sufficiently foreshadowed so as to present it for decision. Accordingly, and to take into account *34 stipulated and conceded items, as well as recomputations of the additions to tax, Decision will be entered under Rule 50. Footnotes
1. As alleged in respondent's amended answer, the amount of loss report on the partnership return should have been computed as $215.16.↩
2. Paragraph 5(b) of the petition stated: "Bad debts of $4,999.00 were sustained from corporate notes issued to * * * [the partnership] in the amount of $5,000.00, endorsed by same and presented to the bank for payment. Payment was stopped by the maker of said notes, rendering same of no cash value to the partnership."↩