ROGERS, J.
 

 The plaintiff, Walter H. Gordy, brought suit to enjoin Robert S. Maestri, commissioner of conservation, and three agents of the conservation department from interfering with plaintiff’s trapping operations on Marsh Island. On plaintiff’s application, a restraining order was granted and a rule was issued upon the defendants to show cause why a preliminary injunction should not issue. Defendants filed exceptions to the jurisdiction of the court and of no right or cause of action and then, with reservation of the exceptions, answered the rule nisi. The court below overruled the exception to its jurisdiction, but maintained the exception of no right or cause of action, recalled its restraining order, and dismissed plaintiff’s rule for a preliminary injunction. The correctness, vel non, of the latter ruling is before us for decision.
 

 The allegations of plaintiff’s petition are, substantially:
 

 That the Russell Sage Foundation, on November 1, 1920, donated Marsh Island to the
 
 *284
 
 state of Louisiana for the purpose of perpetually holding and using the island as a wild life refuge or game preserve. That the state, under its acceptance of the donation, obligated itself at all times to maintain on the property a sufficient number of wardens, selected without regard to partisan or political qualifications, to preserve the property for the purpose for which it was donated and to effectively prevent trespassing thereon. That the contract between the parties contemplated the adoption of such conservative measures as would protect wild life and authorize the appointment of agents especially empowered to destroy such animal life as might be considered destructive of the game or bird life on the reserve. That, in accordance with the terms of the donation, the state, by section 9, art. 1, of Act 273 of 1926, prohibited the taking or destroying of any wild birds or wild quadrupeds, except in those cases in which the department of conservation has previously given a written permit to do so for the purpose and under the condition specified in the permit.
 

 That exercising the discretion vested in him, the then commissioner of conservation, Y. K. Irion, entered into a written contract with plaintiff under date of January 18, 1929, wherein plaintiff was designated and authorized for a period of five years to destroy, under the supervision of the department of conservation, such animal life found on the. land donated as is proved to be destructive of the game life thereon, and to that end to systematically and judiciously trap the land during the open seasons within the five-year period so as to keep the population of muskrats, mink, and raccoon within a degree safe to the game life thereon. That plaintiff was also authorized to employ such assistants as may be necessary to fully effectuate the purpose of his appointment.
 

 That the contract provides for the payment to the conservation department by plaintiff of' 25 per cent, of the gross revenues, the remainder of the revenues to be retained by plaintiff as full compensation for the performance of the obligations undertaken by him in the contract. That the agreement further provides the designation and appointment is to be irrevocable during the entire period of five years, except for just cause shown.
 

 Plaintiff alleges:
 

 That he is actively engaged in the performance of the obligations imposed upon him by the contract, and that his investment in-improvements and equipment has exceeded $4,000. That he was operating on Marsh Island during the present open season when Robert S. Maestri, commissioner of conservation, issued a general proclamation revoking all agencies, deputyships, and commmissionerships, and gave plaintiff personal notice of his revocation of the contract hereinabove referred to.
 

 That, acting in conjunction with Maestri, the three other defendants, Claude Nugier, M. St. Germain, and J. M. Segura, have invaded Marsh Island and ordered plaintiff’s employees to abandon their work, disrupting plaintiff’s organization to his great loss, and have further undertaken to exclude plaintiff from Marsh Island where he is engaged in the exercise of his rights under his contract.
 

 The prayer of the petition, in accordance with its allegations, is that the commissioner of conservation and his agents be enjoined from interfering with or trespassing upon the rights of the petitioner.
 

 The exception of no right or cause of action, generally speaking, is leveled at the alleged illegality of the contract entered into between the conservation department, represented by V. K. Irion, then acting as
 
 *286
 
 commissioner, and the plaintiff, Walter H. Gordy, and the alleged disregard shown by the contracting parties for the laws enacted by the state Legislature for the protection of wild quadrupeds, particularly fur-bearing animals. The respondent judge set forth in writing the reasons on which he predicated his judgment maintaining the exception. Relator contends that these reasons are unsound, and hence that the judgment should be annulled. In his argument to demonstrate his contention, the relator urges that, no matter how his contractual relations may be described in his petition, the substance of his contract must determine its nature. Obviously the relator correctly states the general rule for the interpretation of contracts. Applying the rule to the case in hand, we find that the contract entered into between the relator and the former commissioner of conservation is one of lease and not of agency. All the elements required for a valid lease are present in the agreement, viz. the thing, the price, the time, and the consent. Giv. Code, arts. 2670, 2671, 2674 ; Hardy v. Lemons, 36 La. Ann. 146 ; Logan v. State Gravel Co., 158 La. 105, 103 So. 526 ; Roussel v. Dalche, 158 La. 742, 104 So. 637. Hence the contract is illegal, being in plain contravention of the donation and the legislative act (No. 70 of 1920) authorizing its acceptance; the act of donation expressly stipulating that:
 

 “The donee shall not sell or
 
 lease
 
 the lands so donated or devote them to any purpose than that of a refuge or reserve for wild life, nor shall it allow any species of business, industry, manufacture or development to be carried on this reserve of any kind whatsoever. This restriction, however, shall not apply to the oyster industry which may be carried on under the oyster laws of the State of Louisiana. * * * ” (Writer’s italics.)
 

 The donation was also accepted by the state under the obligation to declare and publicly proclaim the lands.donated to be a wild life-refuge, clothed with all the protection afforded to said lands under the conservation laws. The controlling statute in this respect is Act No. 273 of 1926. Under section 9 of article 1 of that statute, the conservation department is authorized to maintain a wild life refuge on the lands donated, subject, necessarily, to all regulatory laws.
 

 The act of donation provides, in clause 4,. part 5, -that the donee, through its agents specially authorized therefor, may destroy such animal life as is proved to be destructive of' the wild life on the refuge.
 

 Plaintiff bases his action on the theory that he is conducting his trapping operations as a special agent, under a contract coupled with an interest, of the conservation department. This theory appears to us, as we have hereinabove indicated, to rest on the name and form given to the contract by the parties rather than on the purpose of the agreement. But, be that as it may, we are unable to maintain the validity of the cause of action asserted by plaintiff.
 

 Plaintiff alleges the existence of his appointment as a special agent of the conservation department for five years under a private-contract entered into pursuant to the terms-of the act of donation, referred to supra, authorizing the donee, through its agents, to-destroy such animal life as is proved to be destructive to the wild life on the refuge, and under the provisions of law referred to-infra.
 

 Under section 8 of article 1 of Act 273 of 1926, in order to protect the wild life of the state, the commissioner of conservation is-required to appoint not less than twenty-five agents. These agents receive a fixed compen
 
 *288
 
 sation and are removable at tbe pleasure of
 
 the
 
 commissioner. In
 
 addition to this
 
 requirement, under the same section of the statute, the commissioner is authorized to appoint as many special or co-operative officers, to be designated special conservation agents, as he may deem proper. These officers are clothed with the rights, powers, and duties conferred upon conservation agents, except as áre especially excepted. They must serve without expense to the state or to the department in excess of an annual salary of $1, and are subject to removal at the pleasure of the commissioner. So far as we are advised, these are the only classes of agents that the commissioner of conservation is, under the law, authorized to appoint. Manifestly, plaintiff’s employment is not embraced within either of these classes, and he expressly disclaims that it is.
 

 Plaintiff’s position, as we understand it, is that the clause in the donation, referred to supra, authorizing the destruction of the wild life that destroys other wild life on the refuge must be read in connection with the second or last paragraph of section 9 of article 1 of Act 273 of 1926, and, when so read, constitutes the authority for his appointment under a contract as a special agent of the conservation department, whereby he is empowered for a period of five years to destroy the predatory animals on Marsh Island.
 

 The statutory provision relied on by plaintiff in support of his contention reads as follows, viz.:
 

 “It shall be unlawful for any person knowingly to take, attempt to take, disturb or destroy any wild bird or wild quadruped, or the nest, egg or young thereof on said lands so set apart as sanctuaries or propagating grounds; or to have in possession, or to keep, while on said lands, any firearms, trap, snare or other device which is capable of being used in the taking or disturbance of said birds or quadrupeds on breeding of propagating lands or sanctuaries,
 
 unless such person shall have previously been expressly authorised by a special iw'itten permit of the Commissioner so to do, and only for the purpose or purposes, and under the conditions to be specified m such permit,"
 
 (Writer’s italics.)
 

 But it is a far cry between the contract herein declared on by plaintiff and the permit which the commissioner of conservation is authorized to issue under the statute. A contract, generally speaking, is an agreement, legally enforceable, between two or more persons to do or to forbear something. A permit, generally speaking, is a license, revocable at will, granted by a competent authority, by which some restraint or illegality is removed. The formal written instrument signed by plaintiff and the former commissioner of conservation would undoubtedly constitute an enforceable agreement if the parties were capable and its purpose were lawful, which they were not. Neither can it stand as a mere permit whereby plaintiff is granted the exclusive privilege of trapping for a period of five years the fur-bearing animals on Marsh Island. Certainly, such a privilege would not be in keeping either with the letter or the spirit of the state’s obligations to the Russell Sage Foundation.
 

 Plaintiff contends that the only manner in which the conservation commission may avail itself of the permission granted the donee in the act of donation to destroy the. predatory animals on the refuge is by means of an agency created for that purpose. He argues his contract confers upon 'him such an agency. The contention is a mere non sequitur. If it be true, as suggested by plaintiff, that the
 
 *290
 
 agents, general and special, of the conservation department cannot be required as a part of their official duties to destroy, as occasion may require, the predatory animals on Marsh Island, there is no reason why, so far as we are advised, the department could not employ, temporarily, the requisite number of persons for that purpose. Such persons would be mere employees of the department; .subject, at all times, to its direction and control. Or perhaps the purpose might be attained by issuing, from time to time, written permits with proper restrictions to suitable persons under the provisions of section 9 of article 1 of Act 273 of 1926, hereinabove quoted. If we are mistaken in this, the question is one that must receive its answer in some future legislative action. For certainly the agreement under which plaintiff is now conducting his trapping operations on Marsh Island is not such an agreement as is contemplated under the terms of the act of donation or the provisions of law applicable thereto. By virtue of the agreement, the hands of the conservation department are tied for five years. During that period the donated property will be virtually out of the control of the department and under the control of a private individual, to whom, and his employees, is delegated the right or discretion to determine the enemies of the wild life on the refuge, the necessity and time for and the manner of their destruction.
 

 What may be deemed proper in one year may be found to be utterly useless the succeeding year. The power is not given to any human being to foretell, with even reasonable certainty, what changes a few years may effect.
 

 Our conclusion is, as hereinabove indicated, that, whether it be in the form of a contract ' of lease or in the form of a contract of agency, the so-called contract under which plaintiff is operating contravenes the terms of the donation and the provisions of the conservation law, and hence is invalid. Therefore it becomes unnecessary for us to consider the question .of whether plaintiff is an agent with an interest or to pass upon the other contentions advanced by the respondents in support of their exception of no right or cause of action.
 

 For the reasons assigned, the rule nisi herein issued is discharged and relator’s application is denied at his cost.
 

 O’NIEDL, C. J., takes no part.
 

 ST. PAUL and THOMPSON, JJ., dissent.