## DEFELICE v. AUTIN.
### No. 1428.

Court of Appeal of Louisiana. First Circuit.
March 4, 1935.

See, also (La. App.) 149 So. 889; (La. App.) 151 So. 648.

Harvey Peltier and Hubert Lafargue, both of Thibodaux, for appellant.

Howell & Deramee, of Thibodaux, for appellee.

LE BLANC, Judge.

Alleging that he was the lessor of the trapping privileges on certain described lands situated in the parish of Jefferson and that defendant, the lessee, owed him the sum of $222.50 on the rental of $350 that was due for the year 1932, plaintiff, on January 16, 1933, obtained a writ of provisional seizure on all movable property belonging to the defendant which was then on the leased premises, and on which he alleged he had a pledge for the payment of his rent.

Acting under authority of the writ, the sheriff seized and took in his possession the following property: "All steel traps, (2) pirouges, (272) furs and 2 minks and the gasoline propelled boat named 'Century.' "

After the seizure of his property, defendant appeared in court to move for the dissolution of the writ and demand attorney's fees for its dissolution, in the sum of $100. The principal issue raised in the motion to dissolve is that the plaintiff did not enjoy the lessor's privilege he claims as the contract between them, which, it might be here stated, was oral, did not constitute a lease, but was merely the grant of a servitude. The motion is also based on the failure of plaintiff to have alleged in his petition that he is the owner or lessor of the land said to have been leased. It is also urged that, if there had been a breach of the contract, before resorting to the process which he did, plaintiff should have brought a suit to have the contract declared null.

There was judgment in the lower court in favor of the plaintiff denying and dismissing the motion to dissolve, and the matter is now before this court on a devolutive appeal from that judgment.

Taking up the contentions of the defendant in the reverse order in which we have referred to them, we find no merit in the one mentioned last, which is to the effect that, before seeking to enforce his right by means of a writ of provisional seizure, plaintiff should have brought a suit to have the court decide first, whether there had been a breach of the contract. Article 2729 of the Civil Code provides such a remedy to either the lessor or the lessee in case of the neglect of the one or the other to fulfill his engagements under the contract, but there is nothing in the article which makes it mandatory on the part of the lessor to do so before resorting to the process of obtaining a writ of provisional seizure which the law specifically grants him in or-

der to protect his rent under the lease, provided he follows the procedure pointed out by the Code of Practice. C. C. art. 2705; C. P. art. 284 et seq.

■■ The contention that defendant is entitled to a dissolution of the writ because plaintiff failed to allege in his petition that he was the owner or lessor of the property, in order to show his authority to lease, is equally without merit. The question of the ownership of leased property is one which concerns the owner and the lessor, and it cannot be raised by the lessee as a defense in an action by the lessor to enforce his obligations under the lease. According to the terms of article 2682, R. C. C., "he who lets out the property of another, warrants the enjoyment of it against the claim of the owner." That is the security afforded the lessee; and, in case of any adverse claim of ownership, he has the right to rely on the warranty of his lessor. In Sientes v. Odier & Co., 17 La. Ann. 153 and in Spence v. Lucas, 138 La. 763, 70 So. 796, 798, the court held that "ownership [of the property] is not essential to make a valid contract of lease," and in Morgan City v. Dalton, 112 La. 9, 36 So. 208, 211, the court says that "it is well settled that he who enters upon and enjoys the possession of property as a lessee cannot, by way of defense to an action to enforce the obligations of his lease, contest the title of his lessor, even though he himself may acquire an adverse and better title."

■ We come now to what we consider the principal issue in the case, which is in regard to the real contractual relation between the parties. The contention made by defendant's counsel, as already stated is that the agreement between them resulted merely in a grant of a servitude, and not in a contract of lease under which plaintiff enjoyed the privilege of a lessor.

Plaintiff's petition alleges that "on or about October 20, 1932, petitioner leased to Benoit Autin, of the Parish of Lafourche, the trapping privileges on the following described land situated in the Parish of Jefferson, to-wit:" (A description of the land then follows.) It is then alleged that the rental was fixed for the entire trapping season, at $350, payable in a certain manner fully thereafter detailed. Further, it is averred that, under the method of payment as set out, defendant was credited on one occasion with the sum of $37.50 and on another with the sum of $90. These two payments amount to $127.50, which, taken from the total amount of the rent for the season, $350, leaves the balance

of $222.50, which plaintiff claims to be due and for which he obtained the writ of provisional seizure.

The agreement between these parties as set out in plaintiff's petition was clearly a contract under which defendant was to trap plaintiff's lands and catch fur bearing animals thereon, for the exercise of which right or privilege he was to pay a fixed and determinate price. The question that arises then is, Can such a right or privilege form the object of a valid contract of lease?

Civil Code, art. 2669, defines a lease as "a synallagmatic contract, to which consent alone is sufficient, and by which one party gives to the other the enjoyment of a thing, or his labor, at a fixed price." Under the provisions of article 2678, "all corporeal things are susceptible of being let out, movable as well as immovable, excepting those which can not be used without being destroyed by that very use," and by the terms of article 2679, "certain incorporeal things may also be let out, such as a right of toll, and the like. * * *" It seems to us that, under this last article of the Code, the right to trap might be considered alike to the right of toll, which is therein mentioned as an illustration, and might as well form the object of a contract of lease.

Reference was made in argument to the decisions of the Supreme Court in the Frost-Johnson Lumber Company Cases which culminated in the very close decision in the case of Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, 208, and in which it was held that "the right to extract oil and gas from the land of another is a 'servitude,' and is prescribed by nonuser for 10 years," and it is urged that; by analogy, the same principle should apply in this case. But the issue in those cases did not involve the drawing of any distinction between a contract of lease and one resulting in a servitude. The important question was one which concerned the status and the ownership of minerals, as property, and especially so in their relation to the land under which they are situated. What the court held was that oil and gas under the land, being fugitives, were the property of no person until reduced to possession after having been abstracted, and that a reservation of such minerals in a sale of the land by the landowner was not a reservation of the minerals themselves, as he could not reserve something which he did not own, but resulted merely in a right to go on the land for the purpose of exploring it for the minerals, which right cre-

ated a servitude that was prescriptible by nonuse for ten years. Nothing is said in the decision with regard to the right of the landowner to lease the mineral rights on his land to another party, for the very good reason, as we view it, that no such issue was involved in the case. In a very recent decision, however, on rehearing, such right of lease seems to have been specifically recognized by the court. See Federal Land Bank v. Mulhern, 180 La. 627, 157 So. 370.

Our examination of the authorities discloses that, in all those cases in which there had been a sale or a reservation of the mineral rights, the effect produced by the sale or reservation was the creation of a right of servitude. Holladay v. Darby, 177 La. 297, 148 So. 55; Gayoso Co. v. Arkansas Natural Gas Corp., 176 La. 333, 145 So. 677; Palmer Corporation v. Moore, 171 La. 774, 132 So. 229; Nabors Oil & Gas Co. v. Louisiana Oil Refining Company, 151 La. 361, 91 So. 765; Frost-Johnson Lumber Co. v. Salling's Heirs, supra. On the other hand, in those cases in which the agreement consisted of a grant by the owner of the land to another party of the right to explore for minerals on a given rental or on a royalty basis, the contract was invariably treated as a lease. Spence v. Lucas, 138 La. 763, 70 So. 796; Cooke v. Gulf Refining Company, 127 La. 592, 53 So. 874; Louisiana Oil Refining Corp. v. Cozart, 163 La. 90, 111 So. 610. To this last list may be added Logan v. State Gravel Company, 158 La. 105, 103 So. 526, which involved the right to go upon the property of another for the purpose of excavating and removing therefrom sand and gravel for a certain fixed royalty and the grant of which right was specifically held to constitute a contract of lease. In the case presently before us, we have an example of this latter class of cases, and we are definitely of the opinion that the agreement between the parties resulted in a contract of lease and not a right of servitude as contended by defendant.

It is interesting to note that in a recent case the Supreme Court was called on to consider the question whether a certain agreement between the plaintiff in that case and the then commissioner of conservation, and which, in substance, amounted to the grant of the trapping privileges on certain lands for a stipulated consideration, constituted a contract of agency or one of lease, and it was therein distinctly held to be a lease. We refer to the case of Gordy v. Maestri, Commissioner of Conservation, et al., 170 La. 281, 127 So. 628, 629. True, the same distinction as we are here called on to make was not at issue, but the court seemed to be so strongly of the opinion that the contract was one of lease, which for the purpose of that decision was held to be in contravention of a state statute in so far as those particular lands were concerned, that we almost perforce adopt the decision as authority on the question of the nature and character of the contract in this case. We take the liberty of quoting as follows from the decision: "In his argument to demonstrate his contention, the relator urges that, no matter how his contractual relations may be described in his petition, the substance of his contract must determine its nature. Obviously the relator correctly states the general rule for the interpretation of contracts. Applying the rule to the case in hand, we find that the contract entered into between the relator and the former commissioner of conservation is one of lease and not of agency. All the elements required for a valid lease are present in the agreement, viz. the thing, the price, the time, and the consent. Civ Code, arts. 2670, 2671, 2674; Hardy v. Lemons, 36 La. Ann. 146; Logan v. State Gravel Co., 158 La. 105, 103 So. 526; Roussel v. Dalche, 158 La. 742, 104 So. 637."

We find all those same elements present in the agreement under consideration in this case, and, following the reasoning of the court just quoted, we hold that the contract was one of lease and that consequently the lessor enjoyed the lessor's pledge, lien, and privilege which he claims.

In brief before this court, counsel for defendant has raised the additional issue that the traps said to have been seized are exempt from seizure, being tools and instruments used by the defendant and necessary for the exercise of his trade by which he gains his living. The record contains no plea whatever relating to a claim for exemption, and the question is raised for the first time, as stated, before this court. We understand the law to be that a claim for exemption must be presented by a special plea, and, in the absence of any such plea in this case, we decline to consider the question.

The judgment appealed from is correct and it is therefore affirmed.

MOUTON, J., not participating.