423 So.2d 695 (1982)
COMMISSION ON ETHICS FOR PUBLIC EMPLOYEES
v.
IT CORPORATION.
No. 82 CW 0257.
Court of Appeal of Louisiana, First Circuit.
October 12, 1982.
Rehearing Denied December 16, 1982.
*696 R. Gray Sexton, Com'n On Ethics For Public Employees, Baton Rouge, for respondent.
*697 Charles S. McCowan, Jr., R. Gordon Kean, Jr., Ben R. Miller, Jr., Sanders, Downing, Kean & Cazedessus, Baton Rouge, for applicant.
Before PONDER, SAVOIE and ELLIS, JJ.
ELLIS, Judge.
This matter arises from an affidavit of complaint brought by a private citizen against IT Corporation before the Commission on Ethics for Public Employees, alleging that IT Corporation had violated certain provisions of the Code of Governmental Ethics. IT Corporation had been awarded a contract for $375,598.00 by the Louisiana Department of Natural Resources to conduct a feasibility study for a regional hazardous waste disposal facility. IT Corporation, a private California corporation, subcontracted with Research Associates, Inc., a private Louisiana corporation, to do certain work in conjunction with the contract awarded to IT Corporation. Ultimately, IT Corporation submitted its study in compliance with its contract, recommending a particular site for a waste disposal facility. IT Corporation then acquired options to buy the recommended site and has since exercised these options.
The complaint questioned the propriety of IT Corporation's subcontract with Research Associates and IT Corporation's acquisition of one of the options mentioned above. After considering the complaint, the Commission on Ethics for Public Employees resolved to conduct a private investigation to elicit evidence in order to determine whether to conduct a public hearing, in accordance with its authority under the Code of Governmental Ethics, La.R.S. 42:1101 et seq.
IT Corporation then filed exceptions with the Commission in which it argued the Commission was without authority to conduct any investigations or hearings involving any activity of IT Corporation. The exceptions were based upon the following allegations: 1) that the Commission had no subject matter jurisdiction in that the affidavit of complaint did not constitute a "complaint" as required by Section 1141(A) of the Code; 2) that the Commission had no jurisdiction over either IT Corporation or any of its activities because IT Corporation was not a "state employee" within the meaning of the Code; and 3) that any proceeding by the Commission would deprive IT Corporation of due process because of inadequacies regarding the Commission's rules of procedure.
After hearing argument by counsel for IT Corporation and counsel for the Commission, the Commission voted to overrule all of IT Corporation's objections. The Commission then proceeded with its private investigation. As a result of this investigation, the Commission voted to conduct a public hearing for the purpose of exploring two formal charges it brought against IT Corporation, both of which were related to the allegations described in the original affidavit of complaint.
In its notification to counsel for IT Corporation of the results of the private investigation, the Commission stated that, depending upon the findings of the public hearing, it might, in accordance with the Code, cancel or rescind any or all of the following four "contracts": the contract between IT Corporation and the Department of Natural Resources to conduct the feasibility study, a "Hazardous Waste Disposal Permit", an "Air Emission Permit", and a "Water Discharge Permit", all three of which had been issued to IT Corporation by the Environmental Control Commission relative to the hazardous waste facility IT Corporation was planning to construct on the site which it had recommended to the Department of Natural Resources in its feasibility study.
In response to the charges, IT Corporation filed Exceptions and a Motion for Summary Dismissal of Charges. IT Corporation reiterated all of its previously filed exceptions as well as alleging that the activities charged did not constitute violations of the Code, that the Commission was without jurisdiction to cancel or rescind any of the three permits issued by the Environmental *698 Control Commission, that the charges should be dismissed for being vague and indefinite, and that there was no statutory basis upon which to base the charges.
After the Commission received evidence and heard argument in support of these exceptions and motion for dismissal, it unanimously resolved to overrule all of the exceptions as well as the motion for dismissal. From this denial, IT Corporation filed application for supervisory writs. On April 14, 1982, this Court granted a writ of certiorari in this matter. Additionally, this Court ordered that all proceedings against IT Corporation be stayed and suspended until further orders of the Court.
IT Corporation makes five assignments of error. They are as follows:
1. There was no applicable law upon which to base an investigation or charges.
2. IT Corporation is not a state employee subject to the jurisdiction of the Ethics Commission.
3. Even if the term "state employee" includes corporations, under the existing facts, IT Corporation is not a "state employee" subject to commission jurisdiction.
4. Procedural deficiencies in these proceedings require dismissal; or, in the alternative, exclusion of all evidence received or obtained as a result of "private" hearings or investigation.
5. The Commission has no authority or jurisdiction to impose any penalty or sanction against IT Corporation, including but not limited to cancelling or rescinding its contract with the Department of Natural Resources or any permit granted by the Environmental Control Commission.
ASSIGNMENT OF ERROR NO. 1 THERE WAS NO APPLICABLE LAW UPON WHICH TO BASE AN INVESTIGATION OR CHARGES.
IT Corporation's first assignment of error is that the Legislature, in amending and re-enacting the Code of Governmental Ethics, effective April 1, 1980, inadvertently repealed the Code as it had existed prior to April 1, 1980, and in so doing, created "immunity" for those who had violated the provisions of the old Code. The Legislature, however, provided for an uninterrupted and unimpeded transition from the old Code to the new Code. Section 2 A of Act 443 of 1979 reads as follows:
"Section 2. Transfer of functions
"A. Effective April 1, 1980, all rights, powers, responsibilities, and duties of the Louisiana Commission on Governmental Ethics shall be transferred to the Commission on Ethics for Public Employees. All resources available on such date to the Louisiana Commission on Governmental Ethics shall be transferred to and henceforth shall be vested in and exercised by the Commission on Ethics for Public Employees pursuant to the provisions of this Chapter."
IT's first assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2 IT CORPORATION IS NOT A "STATE EMPLOYEE" SUBJECT TO THE JURISDICTION OF THE ETHICS COMMISSION.
At the outset, it should be noted that the violations alleged against IT Corporation would have occurred in 1979, prior to the amending and reenactment of the Code of Governmental Ethics; therefore, the relevant substantive provisions of the Code would be those which were in effect at that time, and prior to April 1, 1980, the effective date of the new Code.
As a result of its private investigation, the Commission on Ethics for Public Employees brought two charges against IT Corporation. The first charge is that IT Corporation violated Section 1112(A) of the old Code in that:
"IT Corporation, as a `state employee' within the meaning of the above cited prohibition, was proscribed by the cited section of the Code from `participating' in a `transaction' involving the state in *699 which IT Corporation had a substantial economic interest.
"IT Corporation by negotiating to acquire an option to purchase the tract of land designated in the study as `Area I' achieved a substantial economic interest in the transactions more particularly set forth in subparagraph 2 above."
Section 1112(A) read as follows:
"A. Economic Interests of a State Employee.  No state employee shall participate in a transaction involving the state in which he has a personal substantial economic interest, as distinguished from a general class or general group of persons, of which he may reasonably be expected to know."
The second charge is that IT Corporation, as a "state employee", or, in the alternative, as an "other person", violated Section 1118 by paying, transferring, or delivering to Ned Cole and Research Associates, Inc. a thing of economic value in the form of payments totaling $53,836.00, which Research Associates, Inc. and Ned Cole were prohibited from receiving by Section 1113.
The statutes pertinent to this second charge read, in relevant part, as follows:
"Section 1118. Illegal payments
"A. Payments as Compensation.  No state employee or other person shall give, pay, loan, transfer or deliver or offer to give, pay, loan, transfer or deliver, directly or indirectly, to any other state employee or person any thing of economic value which he would be prohibited from receiving by any other provisions of this Part."
"Section 1113. PUBLIC OFFICERS  EMPLOYEES
"B. Compensation for Service to Others.  No state employee shall receive any thing of economic value for or in consideration of personal services rendered, or to be rendered, to or for any person during the term of his state employment unless such services meet each of the following qualifications:
....
"(4) The services are neither performed for nor compensated by any person from whom such employee would be prohibited by R.S. 42:1114 from receiving a gift; unless the services and compensation are fully disclosed in writing to the head of the employee's agency."
"Section 1114. Gifts
"General rule for all employees.  No state employee shall receive, accept, take, seek or solicit, directly or indirectly, any thing of economic value as a gift, gratuity or favor from any person or from any officer, director, agent or employee of such person, if such person:
"(1) Has or is seeking to obtain contractual or other business or financial relationships with such employee's agency; or
"(2) Conducts operations or activities which are regulated by such employee's agency; or
"(3) Has interests which may be substantially affected by such employee's performance or non-performance of official duty.
"And if such state employee knew or reasonably should have known of the existence of any of the conditions covered above."
Charge number one by the Ethics Commission is clearly dependent on IT Corporation being a "state employee" within the meaning of the Code of Governmental Ethics. The same is true of the primary charge in charge number two. However, the alternative charge in charge number two is that IT Corporation, as an "other person", violated the Code by subcontracting part of its work to Ned Cole and Research Associates, Inc. and paying them therefor. This alternative charge is dependent upon the premise that Research Associates, Inc. was a "state employee" within the meaning of the old Code. The naming of Ned Cole as an individual in this charge is of no consequence since the record clearly reflects that Ned Cole at all times acted only in his capacity as president of Research Associates, Inc. and that the contractual relationships raised by the alternate charge were between the State and Research Associates, Inc., and not with Ned Cole, individually.
*700 The determining factor as to whether IT Corporation can be subject to the jurisdiction of the Ethics Commission, therefore, is whether or not a "state employee", within the meaning of the old Code, could include a private corporation. Section 1111(G) of the Code defined a state employee as follows:
"G. `State employee' means any one, whether compensated or not, who is
"(1) An administrative officer or official of the state who is not filling an elective office; or
"(2) Appointed by the Governor (whether or not approval is required by the Senate or any other body, agency or person) or is appointed by any elected officer or official of the state or is appointed by any other state employee as defined in this Sub-section, when acting in an official capacity, and the appointment is to a post or position wherein the appointee is to serve the state or one of its agencies, either as a member of a board, commission or other agency, or as an employee of the state or of one of its agencies; or
"(3) Engaged in the performance of a state function under authority of the laws of this state; or
"(4) Under the supervision or authority of an elected state official or under the supervision or authority of another state employee as defined in this Sub-section."
Obviously, it is necessary to determine the meaning of the term "any one" in order to determine if a state employee may include a private corporation.
IT Corporation argues that, had the Legislature intended state employees to include corporations, then it could and would have used the term "person", which is itself defined in the old Code as including corporations, instead of "any one" in defining "state employee".
"One" is defined in Webster's Third New International Dictionary as "a certain indefinitely indicated person or thing usu. of a kind mentioned or under consideration."
This broad definition leads us to conclude that "state employee", as defined in Section 1111(G), above, includes private corporations as well as individuals. Therefore, IT Corporation, as a private corporation, can be subject to the jurisdiction of the Commission on Ethics for Public Employees.
ASSIGNMENT OF ERROR NO. 3 EVEN IF THE TERM "STATE EMPLOYEE" INCLUDES CORPORATIONS, UNDER THE EXISTING FACTS, IT CORPORATION IS NOT A "STATE EMPLOYEE" SUBJECT TO COMMISSION JURISDICTION.
As noted above, the Code of Governmental Ethics defined "state employee", in Section 1111(G)(3), as follows:
"G. `State employee' means any one, whether compensated or not, who is
....
"(3) Engaged in the performance of a state function under authority of the laws of this state; ..."
After a careful and thorough reading of the record and submitted briefs, we conclude that IT Corporation's execution of its contract with the Department of Natural Resources constituted the "performance of a state function under authority of the laws of this state", thereby subjecting IT Corporation to the jurisdiction of the Commission on Ethics for Public Employees.
Although the old Code did not define "state function", we think it clear that the conducting of this feasibility study for a hazardous waste disposal facility falls well within the function of the State to protect and preserve the public health and welfare. As stated by the Legislature in Act 334 of 1978, in declaring its purpose in enacting the hazardous waste control statutes of the Act:
"B. In order to diminish the risks to which the citizens and environment of this state are being exposed it is in the public interest, and within the police power of the state, to establish a framework for the regulation, monitoring, and control of the generators, transportation, treatment, storage and disposal of such hazardous wastes, and it is the declared *701 purpose of this Part to authorize the development, implementation, and enforcement of a comprehensive state hazardous waste control program."
IT Corporation also argues under this assignment of error that, as regards Charge I, it had no "personal substantial economic interest" in its contract with the Department of Natural Resources. All contacts which IT Corporation made with the owners of the site which it ultimately recommended and purchased, IT Corporation argues, were necessary to fulfill the terms of the contract by determining the availability of sites for the purposes of the feasibility study. The Ethics Commission, on the other hand, argues that IT Corporation's contacts with the landowners far surpassed those necessary to fulfill its contract and were more in the nature of personal negotiations, thereby conferring IT Corporation with a "personal substantial economic interest" in violation of Section 1112.
We note, however, that because IT Corporation entered into an option contract with one of the landowners which became effective prior to its termination of state employment, it is not necessary to look into the nature of these contacts and alleged negotiations. Section 1111(G) read, in pertinent part, as follows:
"The termination of any particular term of employment of a state employee shall take effect on the day he resigns, retires, completes the particular work or service for which he was employed and has such work or service accepted, is dismissed, or the termination of his status is otherwise clearly evidenced."
Paragraph 7 of IT Corporation's contract with the Department of Natural Resources reads as follows:
"Payment to the Consultant for services rendered shall be made as a lump sum upon delivery of the final report as specified in Appendix A and approval by the Department. Payment shall be made by the Department within approximately thirty (30) days after submission of an original and two copies of an invoice for the total amount."

IT Corporation timely submitted its feasibility study by September 20, 1979. On September 25, 1979, IT Corporation's real estate option around which this dispute centers became effective. Because, however, IT Corporation was not paid by the State for its services until October 9, 1979, it was still a state employee on the date the real estate option became effective, and did, therefore, acquire a "personal substantial economic interest" in violation of Section 1112.
IT Corporation also argues that, as regards Charge II, Research Associates, Inc. is not a "state employee". The record, however, shows that Research Associates was then under contract with the Department of Natural Resources to manage several significant aspects of the Department's hazardous waste program. The obligations undertaken by Research Associates in these contracts leave no doubt that it was performing a state function, and, was, therefore, a "state employee" within the meaning of the Code.
ASSIGNMENT OF ERROR NO. 4 PROCEDURAL DEFICIENCIES IN THESE PROCEEDINGS REQUIRE DISMISSAL; OR, IN THE ALTERNATIVE, EXCLUSION OF ALL EVIDENCE RECEIVED OR OBTAINED AS A RESULT OF "PRIVATE" HEARINGS OR INVESTIGATION.
Procedural rules for the Commission on Governmental Ethics were adopted under the old law. But the Commission on Ethics for Public Employees apparently does not recognize these procedural rules, although they do not seem to have ever been formally revoked. The Legislature, however, in La.R.S. 42:1141, provided procedures affording the investigated party the full panoply of due process rights. It is not argued by IT Corporation that such due process rights were not protected under the old law, but rather that the failure of the Commission on Ethics for Public Employees to adopt the old procedural rules led to a denial of due process rights under the new law. Since La.R.S. 42:1141 provides ample *702 protection of due process rights, this argument is without merit.
ASSIGNMENT OF ERROR NO. 5 THE COMMISSION HAS NO AUTHOITY OR JURISDICTION TO IMPOSE ANY PENALTY OR SANCTION AGAINST IT CORPORATION, INCLUDING BUT NOT LIMITED TO CANCELLING OR RESCINDING THE CONTRACT BETWEEN IT AND THE DEPARTMENT OF NATURAL RESOURCES OR ANY PERMIT GRANTED BY THE ENVIRONMENTAL CONTROL COMMISSION.
IT Corporation argues that the Department of Natural Resources has been given exclusive jurisdiction over all contracts and permits issued by the Department. Therefore, it contends, it is beyond the jurisdiction of the Ethics Commission to cancel or rescind either the contract between IT Corporation and the Department of Natural Resources or any of the three permits issued to IT Corporation by the EnvironmentalCommission, which is a part of the Department of Natural Resources.
In support of this argument, IT Corporation cites La.R.S. 30:1134(A) as follows:
"A. Except as may be otherwise specifically provided in this Part, the Department (of Natural Resources) shall have exclusive jurisdiction for the development, implementation, and enforcement of a comprehensive state hazardous waste control program consistent with the provisions of this Part and applicable federal laws and regulations."
IT Corporation argues further that in State v. Rollins Environmental Service of Louisiana, Inc., 398 So.2d 1122 (La.1981), the Louisiana Supreme Court clearly and unequivocally ruled that, "Act 334 of 1978 gave the State Department of Natural Resources exclusive jurisdiction for the development, implementation, and enforcement of a comprehensive state hazardous waste control program consistent with ... federal laws and regulations". The Court then went on to rule that the Department of Natural Resources would have "the same exclusive jurisdiction" over the present hazardous waste control legislation (La..S. 30:1131-1149). IT Corporation argues that Rollins eliminated any questions concerning the Department of Natural Resources' exclusive jurisdiction over the entire area concerning the development, implementation, and enforcement of the comprehensive state hazardous waste control program, including permits.
The simple answer to this argument is that the powers the Legislature granted to the Commission on Ethics for Public Employees do not infringe upon this exclusive jurisdiction of the Department of Natural Resources. Merely because a state department or agency has been granted "exclusive jurisdiction" over a particular area does not mean that its employees are thereby granted immunity from having to comply with legislation specifically designed to regulate the conduct of all state employees. Because the various administrative powers granted the Commission on Ethics for Public Employees which are involved here do apply to all state employees on an equal basis, it cannot be said that the exercise of such powers usurps the exclusive jurisdiction of a state agency or department. This argument is without merit.
IT Corporation also argues, however, that even if the Commission has the power to cancel or rescind its contract with the Department of Natural Resources, the Commission has no authority to do likewise with the three permits issued to IT Corporation by the Environmental Control Commission. IT Corporation bases this argument upon the interpretation it gives to La.R.S. 42:1152.
La.R.S. 42:1152 reads, in relevant part, as follows:
"§ 1152. Rescission of action of a governmental entity
"Subject to the limitations hereinafter set forth, an ethics body may cancel or rescind any contract involving a governmental entity without contractual liability to the governmental entity where:
"(1) The ethics body has found that a violation of this Chapter within its jurisdiction *703 has influenced the making of such contract.
"(2) The ethics body finds under all of the circumstances that the interests of the governmental entity so require; however, such rescission is to be limited so as to not adversely affect the interests of innocent third parties."
"Action of a governmental entity", as used in the title to the above section is itself defined in the present Code in Section 1102(1)(b):
"(1) `Action of a governmental entity' means any action on the part of a governmental entity or agency thereof including, but not limited to:
....
(b) Any grant, payment, award, license, contract, transaction, decision, sanction, or approval, or the denial thereof, or the failure to act with respect thereto; and in which the governmental entity or any of its agencies has an interest, except in matters involving criminal prosecutions."
IT Corporation argues that had the Legislature intended to empower the Commission on Ethics for Public Employees to cancel or rescind all of the governmental actions listed in Section 1102(1)(b), it would have specifically enumerated these actions in Section 1152. However, because the only such action mentioned in Section 1152 is "contract[s]", IT Corporation argues, the Commission has no authority to cancel or rescind the three permits, which IT Corporation claims to be more in the nature of licenses than contracts.
The Commission, on the other hand, argues that because the Legislature has specifically empowered it to cancel or rescind "contract[s]", the Legislature "implicitly has armed the Commission with the jurisdiction and authority to set aside the less favored and `nonproprietary interest' permits and licenses."
This Court cannot ignore the unambiguous wording of Section 1152. In it, the Legislature clearly limited the governmental actions which the Commission can cancel or rescind to "contract[s]", and having done so, we hold that it is beyond the power and authority of the Commission to cancel or rescind any "license".
The final issue with which we are faced is whether the permits involved in this case are "contracts" or "licenses" within the meaning of the Code of Governmental Ethics. The Code itself offers no definition of either term, but the Louisiana Civil Code does define a "contract" in Article 1761 as follows:
"A contract is an agreement, by which one person obligates himself to another, to give, to do or permit, or not to do something, expressed or implied by such agreement."
We note that the Legislature, in the Louisiana Environmental Affairs Act, specifically describes each of the three types of permits involved in this case as being similar to, if, indeed, not interchangeable with, a "license". See La.R.S. 30:1085; 30:1095; and 30:1137.
A license has been defined as "the formal permission granted by a sovereign, generally for a consideration (fee), to a person, firm or corporation, to pursue some occupation or to carry on some business without which the act permitted would be illegal." ACORN v. City of New Orleans, 407 So.2d 1225 (La.1981). All three permits involved herein are in accord with this definition.
Finally, we note that our courts have on previous occasions, specifically differentiated between contracts and permits.
"A contract, generally speaking, is an agreement, legally enforceable, between two or more persons to do or forbear something. A permit, generally speaking, is a license, revocable at will, granted by a competent authority, by which some restraint or illegality is removed. Gordy v. Maestri, 170 La. 281, 127 So. 628 (1930)."
Also see State v. Louisiana State Boxing Commission, 163 La. 418, 112 So. 31 (1927).
For these reasons, we are led to conclude that the permits involved in this case are "license[s]" within the meaning of the Code of Governmental Ethics, and, as *704 such, are immune from either cancellation or rescission by the Commission on Ethics for Public Employees.
Since we have determined that IT Corporation is subject to the jurisdiction of the Commission on Ethics for Public Employees, the case is remanded to the Commission for further proceedings, consistent with this opinion, and according to law. All costs of this appeal shall be paid by IT Corporation, with all other costs to await final determination of this matter on its merits.
REMANDED.
SAVOIE, Judge, dissenting.
I respectfully dissent.
Simply stated, Assignments of Error 2 and 3 attack the jurisdiction of the Commission on Ethics for Public Employees over IT Corporation. The issue raised is whether private corporations are public employees or public servants within the meaning of the act.
At the outset, it should be noted that the Commission does have jurisdiction over persons other than state employees. See Kane v. Louisiana Commission on Governmental Ethics, 250 La. 855, 199 So.2d 900 (1967). It is equally imperative to note that IT Corporation and Research Associates, Inc. are private corporations. Ned Cole is the president and sole stockholder of Research Associates, Inc.
The Commission on Ethics for Public Employees made two charges against IT Corporation. The first charge is that IT Corporation violated La.R.S. 42:1112(A) in that:
"IT Corporation, as a `state employee' within the meaning of the above cited prohibition was proscribed by the cited section of the Code from `participating' in a `transaction' involving the state in which IT Corporation had a substantial economic interest.
"IT Corporation, by negotiating to acquire an option to purchase the tract of land designated in the study as `Area I' achieved a substantial economic interest in the transactions more particularly set forth in subparagraph 2 above."
La.R.S. 42:1112(A) reads, in pertinent part, as follows:
"No public servant ... shall participate in a transaction in which he has a personal substantial economic interest of which he may be reasonably expected to know involving the governmental entity."
The second charge is that IT Corporation violated La.R.S. 42:1117 of the Governmental Ethics Code in that IT Corporation, as a state employee, or in the alternative, as an "other person", violated section 1117 of the Code by paying, transferring, and delivering unto Ned Cole and Research Associates, Inc. a thing of economic value in the form of payments totaling $53,836.00, that Research Associates, Inc. and Ned Cole were prohibited from receiving by reason of La. R.S. 42:1111C(2)(d) of the Governmental Ethics Code.
La.R.S. 42:1117 reads, as follows:
"1117. Illegal payments
"No public servant or other person shall give, pay, loan, transfer, or deliver or offer to give, pay, loan, transfer or deliver, directly or indirectly, to any public servant or other person anything of economic value which such public servant or other person would be prohibited from receiving by any provision of this Part.
"Acts 1979, No. 443, § 1, eff. April 1, 1980."
La.R.S. 42:1111C(2)(d) reads, in pertinent part, as follows:
"1111. Payments from nonpublic sources
"C. Payments for nonpublic service
"(2) No public servant shall receive anything of economic value for or in consideration of services rendered, or to be rendered, to or for any person during his public service unless such services are:
* * * * * *
"(d) Neither performed for nor compensated by any person from whom such public servant would be prohibited by R.S. 42:1115 from receiving a gift."
La.R.S. 42:1115 reads, as follows:
"1115. Gifts
"A. No public servant shall solicit or accept, directly or indirectly, anything of *705 economic value as a gift or gratuity from any person or from any officer, director, agent or employee of such person, if such public servant knows or reasonably should know that such person has or is seeking to obtain contractual or other business or financial relationships with the public servant's agency.
"B. No public employee shall solicit or accept, directly or indirectly, anything of economic value as a gift or gratuity from any person or from any officer, director, agent or employee of such person, if such public employee knows or reasonably should know that such person:
"(1) Conducts operations or activities which are regulated by the public employee's agency.
"(2) Has interests which may be substantially affected by the performance or nonperformance of the public employee's official duty.
"Acts 1979, No. 443, § 1, eff. April 1, 1980."
Charge number one by the Ethics Commission is clearly dependent on IT Corporation being a state employee within the meaning of the Code of Governmental Ethics. The same is true of the primary charge in charge number two. However, the alternative charge in charge number two is that IT Corporation, as an "other person" violated the Code by subcontracting part of its work to Ned Cole and Research Associates, Inc. and paying them therefor. This alternative charge presuposes that Research Associates, Inc., a private Louisiana corporation, was a "state employee" within the meaning of the Code. The naming of Ned Cole as an individual in this charge is of no consequence since the record clearly reflects that Ned Cole at all times acted in his capacity as president of Research Associates, Inc. and that the contractual relationships in question were between the State and Research Associates, Inc., and not with Ned Cole, individually.
Distilled to its finest point, the determining factor here is whether or not the word "anyone" as used in La.R.S. 42:1102, Definitions, Subsection 18  Public Employee, is a term of precise usage requiring only factfinding by the agency and judicial review by this court, or is an inexact term which would require agency interpretation and judicial review by this court consistent with legislative policy.
We find, as a matter of law, that the word "anyone" is used as an exact term. The position of IT Corporation in this matter is that it is not a public employee within the meaning of the statute and it cites R.S. 42:1102, subsection 18 in support of its allegations.
It is the position of the Commission on Ethics for Public Employees that IT Corporation is a public employee within the meaning of the statute, and it cites R.S. 42:1102, subsection 18, in support of its contention. R.S. 42:1102, subsection 18, reads as follows:
"`Public employee' means anyone whether compensated or not, who is: (subsection c) engaged in the performance of a governmental function." (Emphasis added) (See Footnote 1)[1]
The term "public servant" is used interchangeably with public employee and is defined as follows:
"19. `Public servant' means a public employee or an elected official."
The word "anyone" is not defined further under R.S. 42:1101.
R.S. 42:1102, subsection 16, reads as follows:
"`Person' means an individual or legal entity other than a governmental entity or agency thereof." (See Footnote 1)
The statute clearly defines the word "person" to include a private corporation. IT Corporation argues that had the legislature intended the definition of "public employee" to include private corporations, it would *706 have read "public employee means any person". The Commission asserts that if the legislature had intended to limit the concept of "public employee" to individuals or human beings, it could easily have done so by using these terms. The Commission further contends that it was the intention of the Redactors of the Code to provide that all entities that render services to the state must conduct themselves within the framework of the Code of Governmental Ethics.
The issue is one of legislative intent. Where provisions of the law are clear and unambiguous, courts will not deviate from the terms on the pretext of pursuing the spirit of the law. Glazer v. Commission on Public Ethics for Public Employees, (La. App. 1st Cir.1982), 417 So.2d 456.
Repeated thorough readings of the Code of Governmental Ethics as embodied in R.S. 42:1101 et seq. dictate that the word "anyone" was used advisedly by the legislature to exclude from the definition of public employees, private corporations.
The legislature has carefully used the word "person" wherever it intended private corporations should be covered under the provisions of the Code.
An example of clear legislative intent to use the word "person" when including corporate entities is found in R.S. 42:1112B, subsections 2, 3, 4 and 5, which read as follows:
"No public servant ... shall participate in a transaction involving the governmental entity in which to his actual knowledge any of the following persons has a substantial interest:
* * * * * *
"(2) Any person of which he has a substantial economic interest of which he may reasonably be expected to know.
"(3) Any person of which he is an officer, director, trustee, partner or employee.
"(4) Any person with whom he is negotiating or has an arrangement concerning prospective employment."
(Emphasis added)
Another example of the legislature's intent not to equate "public servant" with private corporations can be found in R.S. 42:1141, subsection D, Procedure, subsection 5, 6 and 7, wherein the phraseology is used as follows:
"Subsection 5:
"No disciplinary action shall be taken against a public servant or person ...
"Subsection 6:
"Any public servant or other person ...
"Subsection 7:
"Any public servant or other person ...
(Emphasis added)
These examples erase any doubt as to the legislature's intent regarding private corporations.
The legislature, when intending to include private corporations under this act, advisedly used the word "person", and its failure to do so in the definition of public employee in La.R.S. 42:1102, section 18, dictates the legislature's intent to exclude therefrom private corporations.
Were we to consider the usage of the word "anyone" as inexact, which would then require agency interpretation and judicial review for consistency with legislative policy, we would, based on the above and foregoing, find that the word "anyone" is meant to exclude private corporations.
For the above reasons, the ruling of the Commission denying the exceptions should be reversed, the exception to the jurisdiction of the Commission on Ethics for Public Employees should be maintained and the charges against IT Corporation should be dismissed.
For the foregoing reasons, I respectfully dissent.
NOTES
[1] "Person" by definition includes public employees; the reverse, however, is not true. Public employee is defined within the scope of the Ethics Code while the scope of the definition of person is not so limited.