The pleadings would not sustain such a judgment.

Besides, the owner cannot be made to proceed against those who may have received the price. The plaintiff had a right of its own from which it cannot be deprived by instituting suit against others who were not in the least, either directly or indirectly, authorized to represent the defendant.

For reasons assigned, the judgment is affirmed.

---

(53 South. 874.)

No. 18,065.

COOKE v. GULF REFINING CO. OF LOUISIANA.

(Nov. 28, 1910. Rehearing Denied Jan. 3, 1911.)

*(Syllabus by the Court.)*

1. LANDLORD AND TENANT (§ 39*) — LEASE — CONSTRUCTION.

Courts must construe acts as written, and where a contract of lease is written by the defendant it will be construed as written until the defendant shows that an oversight or error has been committed.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 101–103; Dec. Dig. § 39.*]

2. MINES AND MINERALS (§ 78*) — MINING LEASE—CONSTRUCTION.

The drilling of an oil well by a prospective lessee while the lease is under consideration by the prospective lessor does not fulfill the stipulation that the lessee shall drill a well 30 days after the making of the lease when this lease is signed after the well has been drilled.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 205–207; Dec. Dig. § 78.*]

3. MINES AND MINERALS (§ 73½*)—OIL LEASE —CONSTRUCTION—DURATION.

A lease which stipulates that it is to continue during the time that gas and oil are found in paying quantities is at an end when the time during which the lessee has a right to exploit the land has expired, and no gas and oil have been found.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 200; Dec. Dig. § 73½.*]

4. MINES AND MINERALS (§ 73½*)—OIL LEASE —CONSTRUCTION.

The stipulation that when the defendant "shall begin such operation it shall have the right to make such successive attempts to find oil as it may desire" does not mean that the term of the lease is for an uncertain time, for then it would be in conflict with article 2674, Civ. Code, but must be held to be for two years when intended by the contract, though not expressly stated.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 200; Dec. Dig. § 73½.*]

5. MINES AND MINERALS (§ 78*)—OIL LEASE —CONSTRUCTION.

The stipulation that if the lessee brings in an oil well he shall have the right to exploit the land of his lessor does not give him a right to exploit this land by bringing in a gas well.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 205–207; Dec. Dig. § 78.*]

6. MINES AND MINERALS (§ 73*)—OIL LEASE —CONSTRUCTION.

If one has a lease on land to bore for oil, he cannot extend the lease beyond its terms on the ground that he has failed to find oil, for by his contract he acquired merely a hope, and the lessor has discharged his obligation by permitting the lessee to attempt to realize his hope.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 210; Dec. Dig. § 73.*]

Provosty, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; A. J. Murff, Judge.

Action by M. L. Cooke against the Gulf Refining Company of Louisiana. Judgment for plaintiff, and defendant appeals. Affirmed.

D. Edward Greer, Thigpen & Herold, and F. C. Proctor, for appellant. D. T. Land, for appellee.

BREAUX, C. J. Plaintiff brought this suit to have a lease, signed by her on the 6th day of February, 1907, annulled.

The grounds upon which she attacks the lease under which the defendant holds or claims to hold are that it was agreed between her and her lessee that the latter would begin boring for oil or gas within 30 days of the date of the lease on the land plaintiff described in her petition.

She avers that defendant did not comply with the contract.

She also avers that defendant failed to bore a well within 12 months and another within two years; that defendant defaulted in nearly everything connected with drilling and completing the wells promised.

Another ground of nullity alleged is that the contract contained a potestative condi-tion, as the defendant lessee had it entirely within its power whether to exploit or not to exploit the property.

Furthermore, that the lease is fatally defective because it is without a term; that it was to continue, according to the conditions of the contract, only to the extent that oil or gas were found in paying quantities; that oil and gas have not been found in paying quantities.

That the lease was void for want of consideration and want of mutuality.

Defendant admits the lease and alleges compliance on its part with its terms; that plaintiff received the written lease, which one of its employés had prepared, and that plaintiff held it without signing it for about three months; and that during that time defendant had bored a well, and that it assumed that the lease would be signed as of the date that it was handed to the plaintiff by one of its employés.

It appears that it was not signed as of that date through oversight.

The issues are generally fairly well stated.

We note that the number of acres leased were 80, and that plaintiff had lands adjacent.

One year is stated as the term.

It is a fact that the lessee had at its option the right to drill on one or more of the following sections, to wit, sections 29, 30, 31, 32.

The time limit to begin was 30 days.

As a consideration, defendant agreed to pay, and the plaintiff to accept, $40 cash; in addition, one-eighth of the products of the well, and the defendant was to pay $100 on each producer of gas, and one year was the time within which operations were to begin, according to one clause, and, in another, two years are mentioned.

The defendant reserved the right to extend the term of the lease by paying $40 semiannually.

The contract of lease cannot be referred to as being a model of brevity and clearness.

The lessor leases the exclusive right of drilling for oil, together with a right of way to lay pipes to carry water, oil, or gas in operating the wells.

Another paragraph has the habendum clause generally inserted in all deeds of sale, i. e., the general habendum "to have, to hold."

At times the act has features of a lease, and at others of a sale.

Considering it as a whole, it is a lease.

The difference in the end is not considerable as relates to rights of parties, whether considered as a lease or a sale.

In the next place, by analyzing the contract, one finds that the text is anything but definite about terms, and it is wanting in matter of dates; even the date of the act is involved in uncertainty.

The lessee, it is stated in the act, was to begin to drill one well for oil or gas within 30 days from the date of the lease on other sections of land than those leased.

This, we infer, was somewhat in the nature of an experimental drilling on other lands lessor fancied had oil or gas. It was part consideration of the lease. It was an obligation to drill which lessee assumed.

The difficulty about the first well is that lessee had already, at the date the lease bears, drilled a well on one of the sections last referred to.

In this respect defendant lessee's contention is that three months before the date of the lease its agent handed the contract to be signed by lessor.

The latter, availing herself of the privilege which "under advisement" implies, kept it for three months.

At the end of that time, she signed it, dated it of even date with the date she signed the deed.

During the three months preceding the date of the lease, the defendant, lessee, bored for oil. A well was drilled; it proved dry, and in consequence, to use an expression of the day, not an interesting proposition.

It—this well—was forgotten; at any rate it is not mentioned in the deed.

Lessee's position is that the lease should have been dated in November when it was handed to plaintiff, lessor, for her signature, and when she took the document "under advisement" to determine whether she should sign it.

As it is, despite the date, upon insufficient and unsatisfactory testimony, defendant (lessee) would have us read the act, "well to be drilled," as expressed in the contract, to well "already drilled."

The lessee's officer or agent wrote the contract; it is taken as written. The defendant did not prove that an error or oversight has been committed.

We have to construe acts as written. Conceding for the discussion that the contract of lease should have been dated in November, at the time it was delivered to plaintiff by defendant's agent, as above mentioned, it does not appear that the well was drilled within 30 days from November. It was drilled in January, over 30 days after. And then it must be said that it would be extraordinary if plaintiff chose to stipulate for a well that had already been drilled. The contract provided for a well to be drilled. We accept this as a correct statement of the contract.

In the respect just stated, there was a failure in performance of obligation on the part of the defendant company, the lessee.

The act was never signed by the lessee. This was not made a point in the case, and for that reason no further mention will be made of that fact.

We pass from the well to be drilled in 30 days from the date of the act to the well to be drilled in one year.

As well state here that the lease provided

for three wells; one to be drilled in 30 days, another in 12 months, and still another in 24 months.

Now as to the 12 months' well: The lessor, plaintiff, expressly granted to the petroleum company, defendant, the right at any time before one year to begin operations of drilling a well for oil or gas.

This condition was not fulfilled by defendant, and as to the third well we will anticipate issues to state that five or six days before the end of the year the defendant began to drill a well, and about three months after the expiration of two years of the lease it was "brought in" as a gas-producing well.

Defendant's contention at this point is that the delays that have occurred have been condoned by carrying out the alternative proposition of the deed regarding delays.

These alternative propositions as expressed in the deed are, in event wells were not drilled, the defendant had a right of extension of time in which to begin operations (six months, each extension), provided the defendant company paid $40 for the extension.

These extensions were limited to two years; that is, by paying $40 each six months the lessee had the right of extension, just mentioned.

The payment of $40 has been made in accordance with the contract.

There is another clause in this deed which has attracted our attention; that is, in case the defendant failed to prosecute the work with reasonable diligence, the lease was to terminate—but to copy from the deed:

"When such petroleum company shall begin such operation it shall have the right to make such successive attempts to find oil *as it may desire.*" (Italics ours.)

We said awhile ago that the one by whom the deed was written was not particular about terms and dates.

As to "terms," we had in mind the words quoted above "as it may desire." Surely, it was not meant for any length of time, for then it would be in direct conflict with article 2674 of the Code that a "lessor grants to a lessee the enjoyment of a thing during a certain time."

We assume that the quoted words from the lease intended, though not expressed, to limit the indefinite "desire," to quote from the lease, of the defendant company to two years.

We have stated that the $40 installment stipulated by the defendant has been paid.

We have further stated that the defendant, the petroleum oil company, began to drill a new well a few days before the expiration of the two-year period.

That is the only serious work done, and for that reason the defendant is endeavoring to secure a right beyond the two-year period.

This well, though drilled to a sufficient depth for oil or gas, produced neither.

Subsequently—that is, on May 16, 1909, nearly six months after the expiration of the lease—the defendant began to drill another well upon plaintiff's land. It was finished on the 31st of that month. The well produces gas.

We are of the opinion that under the express terms of the lease the defendant's work, or oil drilling operation, must remain within the two years.

As to whether there should be an extension as relates to the well that has produced some return, that will be considered later.

If this contract is to be construed as a lease of oil or gas producing land it militates against defendant that it made no attempt to explore the land for oil or gas until about six days before the expiration of the two years fixed by the lease.

We will not place our decree upon that ground for it may be that the payment of small amounts for extension kept the lease alive despite defendant's failure to explore for oil or gas.

The lease contains, as is the case in many

other leases of the kind, the provision that it was to continue during the time that oil or gas is found in paying quantities.

Such a provision, we are of opinion, is at an end when the term of the lease has expired, and gas or oil have not been found in paying quantities; whether not found in paying quantities because defendant did not drill or because there was no gas or oil comes to about the same.

Under that clause of the lease, some work should have been timely done in order to observe the conditions of the lease.

The defendant has to some extent construed this lease, and, by the action of its agents and officers, rendered it evident that there was, to say the least, some uncertainty about the possibility of continuing operations under the lease after the two years before mentioned had elapsed.

Defendant's agent called on the agent of plaintiff several months after the two years had elapsed to get an extension, and asked him for a new contract. Plaintiff's agent refused. After that time, defendant drilled a well which is a producer of gas.

The defendant then tendered $100 in accordance with the lease with required defendant to pay that sum upon the successful drilling of a well.

The defendant as to this tender meets it by saying that the bringing in of a gas-producing well did not invest in defendant an interest in the premises of the lessor.

Learned counsel for defendant argue that the lessor sold to the defendant the exclusive right, for adequate consideration, of exploring the land for oil or gas.

That point of view does not materially affect the right of the parties.

Conceding that it is as stated by learned counsel for defendant, the defendant under the terms of the contract was to become the owner of all the oil or gas obtainable by it within the time stipulated, of course, including the extension before stated.

It was the sale of a hope, aptly illustrated by the fisherman's sale of the haul of his net before he thrust it. Civ. Code, 2456.

If the hope fails, there is an end of the sale. The vendor has done all he obligated himself to do.

The next proposition is that under the terms and conditions the defendant had the right to continue exploiting the land because it was stipulated that in case of defendant bringing a well that right would be thereby, secured.

The contract contains such a provision as relates to oil—that defendant might continue to exploit.

The defendant's asserted productive well produced only gas, and there is not a word in the lease about continuing to bore for gas after a certain time.

We infer that the gas well is of no great value, and for that reason escaped the attention of the parties in interest when the lease was drawn.

Thus far we have considered the question from the point of view of a right to continue exploiting for gas or oil under the lease.

Now about the well which defendant drilled—the last well drilled some time after the time limit has passed and the right to continue to exploit it: We are not certain that defendant limits its right to that well alone. It has drilled to the depth of 2,000 feet, and the standard depth for oil in the Caddo field.

The experienced driller, it seems, is confident of success when he finds soft shale, or a red and brown shale, and brown and light sand.

Whether these were found in drilling the well in question is of no special importance.

Enough was found to lead defendant's agent and employé to believe that there was oil near.

We are not of opinion that there is any great hope of finding oil in the new well. We understand that it is already pretty well understood that it is a gas producer, not a

very valuable product in the immediate locality.

Defendant's contention further is that, having made unsuccessful effort to discover oil or gas under the contract for which it paid, it had the right to attempt to recoup its losses and to continue to explore plaintiff's land.

The decision cited in support of this proposition is not as broad as defendant's counsel thinks.

Where a lease contains provision for a test well within a certain time, but makes no provision in case the test fails, there is an implied obligation on the lessee to proceed further with the exploration and development of the land with reasonable diligence and a failure to do so amounts to an abandonment. Henne v. South. Penn. Oil Co., 52 W. Va. 192, 43 S. E. 150.

The difference between the case before us for decision and the cited case supra consists, first, in the fact that the obligation was on the lessee to continue the test, and not, as in the former, as claimed by defendant, on the lessor to permit it to continue drilling after the lease had expired.

In reference to the cash paid—the small amount before referred to—to obtain an extension, the consideration was the extension obtained.

The plaintiff has been fortunate in this venture. She has sold land adjacent to that leased to the defendant for a very handsome price, all because of the search for oil and gas and the value such a search gives. Land of plaintiff, of little value heretofore, has recently been sold for $20,000. While, on the other hand, the defendant in drilling has sunk over half that amount. There was a moral consideration; one which would influence some persons to show some recognition by not insisting upon the immediate execution of a legal right.

Those moral considerations cannot be taken into account.

We are confident that the legal right is with plaintiff.

For reasons stated, the law and the evidence being in favor of plaintiff, it is ordered, adjudged, and decreed that the judgment is affirmed at appellant's costs.

PROVOSTY, J., dissents.