(103 So. 526)

No. 26429.

## LOGAN v. STATE GRAVEL CO.

(March 2, 1925. Rehearing Denied March 30, 1925.)

*(Syllabus by Editorial Staff.)*

**1. Sales ⬅5—"Sale" and "lease" distinguished.**

In a "sale" the property or ownership of the thing sold passes at once out of the vendor to the purchaser, his heirs and assigns, forever, while in a "lease" property or ownership of thing leased remains in the lessor, and the lessee acquires only use or enjoyment of thing leased, and must restore it at the end of the term.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Lease; Sale.]

**2. Mines and minerals ⬅58—Land adapted to mining or quarrying may be leased for portion of produce, though payment called "royalty," rather than "rent."**

In view of Rev. Civ. Code, arts. 1764, subd. 2, 2449, 2671, 2674, 2678, land adapted to mining or quarrying may be leased for certain portion of produce of such mine or quarry irrespective of fact that said portion be called "royalty," rather than "rent," which is a certain profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use.

[Ed. Note.—For other definitions, see Words and Phrases First and Second Series, Rent.]

**3. Mines and minerals ⬅70(1)—Rent is always sufficiently certain, if it can be readily ascertained.**

Rent is always sufficiently certain, if it can be readily ascertained.

**4. Mines and minerals ⬅70(5)—Lessor entitled to lessor's privilege on property situated on leased premises.**

Under lease of premises for quarrying purposes, lessor *held* entitled to lessor's privilege on property of lessee on premises, to secure rentals.

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Joseph L. Golsan, Judge.

Action by Mrs. Ora Nelms Logan against the State Gravel Company, accompanied by seizure of defendant's personal property under claim of lessor's privilege. From a judgment for plaintiff, but dissolving provisional seizure, plaintiff appeals. Reversed as to judgment dissolving writ of seizure; otherwise, affirmed.

Purser & Magruder, of Amite, and Edgar M. Cahn, Curtis & Hall, and Wm. F. Conkerton, all of New Orleans, for appellant.

S. S. Reid, of Amite, for appellee.

ST. PAUL, J. Plaintiff and defendant executed a contract, which they termed a *lease*, the substance of which was that for a term of 10 years plaintiff let and granted to defendant a certain plantation "for the purpose of excavating and removing from said leased premises sand and gravel"; the consideration therefor being that defendant should pay "for all gravel removed from said land a royalty of five (5) cents per ton of 2,000 pounds, and for all sand shipped from said leased land a royalty of two (2) cents per ton of 2,000 pounds, * * * the minimum rent or royalty * * * to be $250 per month."

Defendant having defaulted in its payments, plaintiff thereupon seized certain movable (personal) property situated on the demised premises, claiming thereon a *lessor's* privilege (landlord's lien) as for rent due, whereupon defendant sought to dissolve the writ and set aside the seizure, on the ground that the contract above set forth was not a *lease*, and conferred on plaintiff no privilege or lessor's lien.

### I.

The sole question presented is whether the contract is one of *lease*; the parties having agreed as follows:

"It is understood that the matter is submitted to the court on the question of the legal effect of the document sued on; there is no

dispute as to the amount of the indebtedness claimed in the petition."

## II.

[1, 2] The essential difference between *a sale* and *a lease* is this: That in a sale the property, or ownership, of the thing sold passes at once out of the vendor and to the purchaser, his heirs and assigns, *forever;* whilst in a lease the property, or ownership, of the thing leased remains in the lessor (landlord) and the lessee (tenant) acquires only *the use or enjoyment* of the thing leased, and must restore it at the end of the term.

Hence it is of the *nature* (R. C. C. art. 1764, subd. 2) of a lease that the leased property should be restored at the end of the term, in the same condition in which it was received. But this is not of the *essence* of of a lease; for the parties are clearly at liberty to agree otherwise, to wit, that the tenant may remove, or add to, the improvements on the leased immovables.

We therefore think that the *exception* in R. C. C. art. 2678, which declares that "all corporeal things are susceptible of being let out, movable as well as immovable, *excepting those which cannot be used without being destroyed by that very use,*" has no application to *immovables*; otherwise, we would have the strange situation that in this state mines and quarries could not be *leased*, but only sold—a condition which, we feel quite sure, was never in the contemplation of the Legislature.

The legislator evidently had in mind, in writing that article, the distinction between *loans for use* and *loans for consumption* (R. C. C. arts. 2893, 2894, 2895, 2910, 2911, 2912), which are essentially applicable only to movables.

And again *real estate—i. e., land*—can never be destroyed in a strict sense, even though the use thereof *for some purposes* (say agricultural) may be greatly or even wholly impaired; for there remains always the *site or location,* the "part of the earth's surface, which can be held as individual property, whether soil or rock or water covered, and everything annexed to it, * * * [to] an indefinite extent upward as well as downward to the center of the earth." Century Dictionary, verbo, "Land," No. 5 (quoted in Conn. Mut. Life Ins. Co. v. Wood, 115 Mich. 444, 74 N. W. 656).

Our conclusion is that the law of this state does not forbid the *leasing* of mines and quarries, or of lands for mining and quarrying purposes.

## III.

Article 2674 of the Revised Civil Code of 1870 reads as follows:

"Art. 2674. To let out a *thing* is a contract by which one of the parties binds himself to grant to the other the enjoyment of a thing during a certain time, for a certain stipulated price which the other binds himself to pay him."

And article 2671, R. C. C., reads as follows:

"Art. 2671. The price should be certain and determinate, and should consist of money. However, it may consist of a certain quantity of commodities, or even in *a portion of the fruits* yielded by the thing leased." (Italics ours.)

In Hardy v. Lemons, 36 La. Ann. 146, this court held that the letting of a horse in return for a portion of the earnings thereof was a *valid* lease of the horse for "a portion of the *fruits* yielded by the thing leased," and that such a contract "embodies all the elements of a lawful contract of *lease.*"

In Blouin v. Hebert, 134 La. 423, 66 So. 230, this court held, in effect, that there was a valid *lease,* where lands had been let in consideration of 50 cents per ton of sugar cane raised on the premises. "in lieu of rent." The court likened the contract to a lease in which the *price* should consist of "a portion

of the fruits yielded by the thing leased" (the rent being measured by the crops raised).

In Elder v. Ellerbe, 135 La. 990, 66 So. 337, this court held that *the fruits produced by a thing*, which a possessor in good faith was entitled to retain, included only "what is produced and reproduced from time to time or in successive seasons," and did not include the product of mines and quarries, which once taken would not be reproduced. But nevertheless the produce of mines and quarries are *products of the land*, and *products* may be assimilated to *fruits*, within the meaning of R. C. C. art. 2671.

Hence our conclusion is that a mine or quarry, or land adapted to mining or quarrying, may be leased for a certain portion of the produce of such mine or quarry, and the fact that said portion is called "royalty," instead of rent, is not of the least consequence. For "rent [by whatever name called] is a certain profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use." King v. Harper, 33 La. Ann. 496, citing Bouv. Law Dict. verbo, "Rent."

[3] And the rent is always sufficiently certain if it can be readily ascertained. "*Id certum est, quod certum reddi potest.*"

## IV.

[4] In Spence v. Lucas, 138 La. 763, 70 So. 796, this court said, in speaking of a mineral contract on a royalty basis:

"They [the interveners] adopt the expression of opinion by the court in the cases of Cooke v. Gulf Refining Co., 127 La. 592, 53 So. 874, Rives v. Gulf Refining Co., 133 La. 178, 62 So. 623, and Cooke v. Gulf Refining Co., 135 La. 609, 65 So. 758 [also Gulf Refining Co. v. Hayne, 138 La. 555, 70 So. 509], to the effect that mineral leases will be construed as leases, and not as sales, and that the law with reference to leases will be applied thereto in so far as they may be. * * *

"Until the Legislature shall have passed laws specially applicable to the industry of mining, which is a new one in this state, the parties engaged in those pursuits and *the courts of the state will adhere to the jurisprudence on the subject, and treat mineral contracts as LEASES.*" (Italics and capitals ours.)

This expression has stood upon the books for nearly *10 years*, and since then the Legislature has met *seven* times without making any change in the law, in that respect, although the industry has greatly developed since then and many laws have been passed on the subject thereof. We conclude that the legislator is satisfied with the law of the case last cited, and hence we now reaffirm the doctrine therein announced. We think plaintiff entitled to a lessor's privilege on the property situated on the leased premises.

## V.

In this connection, however, we deem it proper to say that nothing herein said conflicts in any way with what we said in Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207, or in Wemple v. Nabors Oil Co., 154 La. 483, 97 So. 666.

What we held in those two cases was that the grant (or reservation) of minerals in place was not a grant of any specific *corporeal thing*, but only a grant (or reservation) of *the right to extract* them from the soil and appropriate them when so extracted; that is to say, the grant (or reservation) of an *incorporeal right* in the nature of a servitude, and not of a *corporeal estate*.

But there are two ways in which that incorporeal right may be dealt with, viz.: (1) It may be *sold outright*, as may "a servitude" or any other incorporeal thing (R. C. C. art. 2449); or (2) the *land may be leased* for mining purposes for a fixed rental, or on a royalty basis (R. C. C. art. 2671).

In the Frost-Johnson Case and in the Wemple Case we have examples of the *outright* reservation (or grant) of such a right; in the case before us we have an example of a *lease* of lands for mining (or quarrying)

purposes, as also in the usual mining contract for a limited time on a royalty basis.

And the owner of the soil may dispose of the mining rights in the one way or the other; but the nature of the grant will be determined according to the principles set forth at the beginning of paragraph II of this opinion.

### Decree.

The judgment appealed from is therefore reversed, in so far as same dissolves the writ of provisional seizure herein issued and releases the property herein seized, and it is now ordered that said writ be maintained, and that plaintiff be recognized as entitled to a lessor's lien and privilege on the property seized thereunder; that in all other respects the judgment appealed from be affirmed, at the cost of defendant in both courts.

O'NIELL, C. J., concurs in the result, but not in the idea that mineral products are in any sense similar to fruits.