## MERREN v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6005.

Circuit Court of Appeals, Fifth Circuit.

June 15, 1931.

W. Scott Wilkinson, C. Huffman Lewis, and Pike Hall, all of Shreveport, La., for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, A. H. Conner, and Helen R. Carloss, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and E. Riley Campbell, Sp. Asst. Bureau of Internal Revenue, both of Washington, D. C., for respondent.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

Petitioner, a resident citizen of the state of Louisiana, complains here of the conclusion of the Board of Tax Appeals that moneys received by him after his marriage, pursuant to a sale contract made before, did not fall into the community of himself and wife.

The facts are brief and simple. They are stated in the finding of the Board of Tax Appeals, 18 B. T. A. 156, and a short statement of them will suffice here.

Petitioner, a single man, resident of the state of Louisiana where the lease was situate, being the owner with two others of an oil and gas lease, in January, 1920, sold and assigned his interest in it to a producing corporation for a consideration to be paid partly in cash, partly in stock, and part "to be paid from the proceeds of the oil from the lease if, as and when produced by the purchaser." In the following month, petitioner was married.

Of the total of this consideration there was paid to petitioner in January, 1920, $30,-

000, and during the period from March to December, 1920, $100,436.36, of which $55,-811.36 came from the proceeds of oil from the lease. Petitioner and his wife for 1920 filed separate income tax returns, in which each took credit as community income for one-half of the amount, which was paid to them from the production of oil from the lease. The Commissioner, declaring that not community property, but merely a change in form of separate property had resulted from the transaction, refused to recognize the separate returns, charged all of the receipts to petitioner, and determined the deficiency accordingly.

On appeal, the Board, reversing the Commissioner on other matters not before us, sustained him on this point, and the case stands here on petition for review presenting the single question whether the $55,000 paid to petitioner after marriage, "from the proceeds of oil lease" in fulfillment of the agreement made before marriage, remained his separate property or fell into the general community of acquêts and gains, which, under and in accordance with the laws of Louisiana, existed between petitioner and his wife after their marriage.

 We think it not debatable in Louisiana or elsewhere, that moneys or things received in payment of or in exchange for property come to him who receives them impressed with the same character of title as the property whose place they take. That in Louisiana, as in the other community property states, property owned separately before marriage does not after marriage fall into the community as the result of its sale or exchange for money or other property for which the money or property was received in exchange, whether the sale or exchange was made before or after marriage. Peters v. Klein, 161 La. 664, 109 So. 349. Further, it is the general rule of law that even in cases of inchoate title to property acquired by the husband before marriage, upon a contract requiring the doing of acts or things on his part, some of which are performed after marriage, the property remains the separate property of the husband. McKay on Community Property, § 534; Welder v. Lambert, 91 Tex. 510, 44 S. W. 281; Estate of Moseman, 38 La. Ann. 219, for the property is deemed to have its origin and its title fixed as of the date of the contract. Here the case is even stronger against petitioner than those cited, for the contract in question did not create a title inchoate to become perfected upon the performance by petitioner of con-

ditions imposed upon him. The agreement was an absolute sale of his then owned property for a fixed consideration, part of it to be paid later, leaving nothing to be done by him. Under it he would either get the additional payments from the oil or he would not get them, as the result, not of his own acts, but of the purchaser's, and of the chances inherent in the oil business. We do not understand petitioner to contest the correctness of these general conclusions as to the effect of an absolute and completed sale before marriage. He denies that such a sale occurred.

 His real insistence is that while he did sell part of his interest in the lease for cash and for stock, and the cash and stock received in exchange for it of course remained his separate property, it must, because of the contingency involved in the agreement for part payment from the proceeds of oil to be produced from the lease, be considered that he did not sell it all, but retained that part. That after marriage he, as manager for the community, in effect, put the part retained to work and derived from it as fruits, by way of royalty, the $55,000 claimed here. Whether if the facts were as he claims them to be, and he stood here upon a record showing that the moneys which he claims for the community came in after marriage in payment of royalties from a lease executed by him before marriage, such moneys should be regarded as rents (Logan v. State Gravel Co., 158 La. 105, 103 So. 526), and therefore fruits of the land, we do not now decide, for no such facts are here presented.

Petitioner never was in the position of a lessor who, owning land, executed a lease reserving an oil royalty. His ownership was of a part of the working interest granted by the lease, which interest in Louisiana gives "an incorporeal right to extract oil from the land and appropriate it when extracted." Logan v. State Gravel Co., 158 La. 105, 103 So. 526. When he sold this working interest he parted with all that he had ever owned in or in connection with the oil for a fixed consideration, $185,000, to be paid in part by the delivery of stock at an agreed price, and in part by the absolute promise of the purchaser to pay $75,000 in cash, and the qualified promise to pay $80,000 from the proceeds of oil which not the petitioner, but the purchaser, was to receive and sell from the lease. There was a contingency which might prevent petitioner from receiving the $80,-000; that contingency was the failure of the lease to produce oil, but there was no contin-

gency upon which the title to any part of the right which petitioner had had before was to remain in or to revert to him. Pugh v. Commissioner (5th C. C. A.) 49 F.(2d) 76. Here was an absolute sale without retention by, or the possibility of, reverter to petitioner of any part of the right which before the sale he had. The thing sold was separate property; the thing received must likewise be.

The petition for review is denied. The judgment of the Board is affirmed.