CHARLES E. DROZDA AND JANE S. DROZDA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Drozda v. Comm'r
Docket Nos. 7690-82, 7727-82.
United States Tax Court
T.C. Memo 1984-19; 1984 Tax Ct. Memo LEXIS 659; 47 T.C.M. (CCH) 885; T.C.M. (RIA) 84019; January 10, 1984. Charles E. Drozda and Jane S. Drozda, pro se. H. Karl Zeswitz, for the respondent. FEATHERSTON
*659 MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: In separately issued notices of deficiency, dated January 18, 1982, respondent determined deficiencies in petitioners' Federal income tax together with additions to tax in these consolidated cases as follows: Petitioner Charles E. Drozda
Additions to Tax
Year
Deficiency
Sec. 6651(a) [1]
Sec. 6653(a)
Sec. 6654
1976
$5,380.70
$1,317.92
$269.04
$195.32
1977
4,539.50
1,101.30
226.98
155.74
1978
2,088.22
492.84
104.41
62.01
1979
4,227.90
985.40
211.40
145.03
*660 Petitioner Jane S. Drozda
Additions to Tax
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654
1976
$5,682.38
$1,393.34
$284.12
$201.30
1977
9,557.31
2,355.75
477.87
291.21
1978
892.00
193.78
44.60
23.81
1979
2,373.00
521.68
118.65
84.34
*661 After concessions by respondent, [2] the issues for decision are as follows: (1) Whether respondent correctly determined deficiencies in petitioners' income taxes for the years 1976 through 1979; and (2) Whether petitioners are liable for certain additions to tax as determined by respondent. Specifically, whether petitioners' failure to file income tax returns for the years at issue was due to reasonable cause and not due to willful neglect within the meaning of section 6651(a)(1); whether, if we find that petitioners underpaid their income tax for the years at issue, any part of petitioners' underpayment was due to negligence or intentional disregard of the revenue laws within the meaning of section 6653(a); and whether petitioners underpaid estimated tax pursuant to section 6654(a). *662 FINDINGS OF FACT At the time they filed their respective petitions in this case, petitioner Charles E. Drozda (hereinafter Mr. Drozda) resided in Lake Charles, Louisiana, and petitioner Jane S. Drozda (hereinafter Mrs. Drozda) resided in Sulphur, Louisiana. During 1976 through 1979, the years at issue, Mr. and Mrs. Drozda were husband and wife and resided in the State of Louisiana.They were subsequently divorced. During the 4 years at issue, Mr. Drozda was employed as a real estate sales manager, and Mrs. Drozda was employed as a substitute teacher at the Calcasieu Parish School. Neither Mr. nor Mrs. Drozda filed Federal income tax returns for any of the years 1976 through 1979. For 1976, Mr. Drozda presented a document to Mrs.Drozda for her signature which she thought was a joint income tax return. Mrs. Drozda signed this document; however, without her knowledge or consent, this document was never filed as a tax return by her husband. Mrs. Drozda did not file separate income tax returns for 1976 and 1977 because she was informed that, as a married resident of a community property State, she was required to file joint returns with her husband. For 1978, Mrs. Drozda, *663 who disagreed with certain tax protest views expressed by her husband and who wanted to pay her income tax, attempted to file her own individual income tax return. She signed a blank Form 1040A and was told by her husband that he would fill it out and file it for her. This document, signed by Mrs. Drozda and filed by Mr. Drozda, provided incomplete information on their income, asserted numerous constitutional objections, and was not signed under penalty of perjury in that the jurat directly above Mrs. Drozda's signature was obliterated. Mrs. Drozda did not attempt to file an income tax return for 1979 because she did not receive the refund for 1978 which she thought was due her. 1. Reconstruction of Petitioner's Income for the Years 1976-1978
For purposes of determining petitioners' income tax liabilities for the years 1976, 1977 and 1978, respondent's agents issued summonses to Mr. and Mrs. Drozda which directed the appearance of each of them to give testimony and requested the production for examination of books, records, papers and other relevant data to establish both the amount of petitioners' income and any deductions and credits to which they might be entitled. *664 Both petitioners failed to furnish the requested testimony or information in response to the summonses. Due to petitioners' failure to cooperate, respondent's agents proceeded to develop the case for 1976, 1977 and 1978 through the use of third-party records.Respondent's agents issued summonses to local banking institutions at which petitioners had accounts in an effort to obtain access to bank records to construct petitioner's income. Petitioners' however, exercised their right to stay compliance with the summonses by directing these banking institutions not to comply. Ultimately the requested bank records were turned over to respondent following judicial enforcement proceedings brought by respondent. Using these and other third-party records, respondent's agents reconstructed petitioner's income for the years 1976, 1977 and 1978. A. 1976
For 1976, respondent's agents utilized the "specific items" method in reconstructing petitioners' income as follows: [3]
Mr. Drozda
Item No.
Income
Source
1
$14,840.39
Real estate commissions and fees paid to
Mr. Drozda by the Ready Realty Company,
a real estate partnership of which Mr.
Drozda was a partner, per 1976 Form
1099 filed by Ready Realty Co.
2
$14,895.53
Salary and interest paid to Mr. Drozda
by the Ready Realty Company per 1976
Form 1065 filed by Ready Realty Co.
3
$3,848.93
Mr. Drozda's distributive share of
partnership income from the Ready
Realty Company per 1976 Form 1065 filed
by Ready Realty Co.
Mrs. Drozda
4
$2,540   Compensation paid to Mrs. Drozda by the
Calcasieu Parish School.
Mr. and Mrs. Drozda
5
$65.75
Interest income paid by the First
Federal Savings and Loan Association,
Lake Charles, Louisiana.
*665 All of the foregoing items of income for 1976 were determined by respondent to be community income and were, therefore, pursuant to the community property laws of the State of Louisiana, attributed one half to each petitioner. B. 1977
For 1977, respondent's agents again utilized the "specific items" method in reconstructing petitioners' income as follows: Mr. Drozda
Item No.
Income
Source
1
$15,586.50
Real estate commissions and fees paid
to Mr. Drozda by Century 21, ALM Ready
Realty, Inc. per 1977 Form 1099 filed
by Century 21, ALM Ready Realty, Inc.
2
$3,900   Rental income paid to Mr. Drozda by
Century 21, ALM Ready Realty Inc. per
1977 Form 1099 filed by Century 21,
ALM Ready Realty, Inc.
Mrs. Drozda
3
$2,540.74
Compensation paid to Mrs. Drozda by the
Calcasieu Parish School per duplicate
1977 Form W-2 filed by the Calcasieu
Parish School Board.
4
$22,941.50
Net proceeds from sale on July 25, 1977
by Mrs. Drozda of a parcel of real
estate acquired by her prior to her
marriage on Jan. 12, 1964 and held
as her own separate property. Sale
Price $23,000. Mrs. Drozda's basis
$58.50 Gain recognized on the property
was determined by respondent to be long
term capital gain.
Mr. and Mrs. Drozda
5
$5,700   Net proceeds from sale of Aug. 31,
1977 by Mr. and Mrs. Drozda of a parcel
of real estate identified as Lot 3 of
Block 20 of Oak Park Addition. Sale
price $10,500.Property purchased by
Mr. and Mrs. Drozda on Dec. 19, 1975.
Petitioners' basis $4,800. Gain
recognized on this property was
Determined by respondent to be ordinary
income.
6
$6,502.80
Net proceeds from sale of 40 shares of
ALM Ready Realty, Inc. stock in Nov.
1977. Sale price $10,000. Petitioner's
basis $3,497.20. Gain on this property
was determined by respondent to be long
term capital gain.
7
$171.22
Interest income paid by the First
Federal Savings and Loan Association,
Lake Charles, Louisiana.
*666 The foregoing items of income for 1977, with the exception of item No. 4, were determined by respondent to be community income and, therefore, pursuant to the community property laws of the State of Louisiana, were attributed one half to each petitioner.Because item No. 4 represented the sale by Mrs. Drozda of property acquired prior to her marriage, thus held as her own separate property, respondent attributed the long-term capital gain on the sale to her in full. C. 1978
Using the "bank deposits" method of income reconstruction for 1978, respondent's agents determined that Mr. and Mrs. Drozda had income for 1978 in the amount of $14,768.09 consisting of deposits into their Gulf National Bank checking account, number XX-X032-1. In addition, petitioners received interest income in the amount of $121.90 from First Federal Saving and Loan Association, Lake Charles, Louisiana. All of this income for 1978 was determined by respondent to be community income and, therefore, one-half was attributed to each petitioner. 2. Reconstruction of Petitioner's Income for 1979
After completion of the examination covering the years 1976 through 1978, respondent's agents attempted *667 and failed to obtain sufficient information from Mr. and Mrs. Drozda [4] to be used in determining petitioners' respective tax liabilities for 1979. Because of the difficulties encountered in securing third-party records for 1976 through 1978, respondent's agents, following applicable Internal Revenue Manual procedures, utilized Bureau of Labor Statistics cost-of-living figures compiled by the United States Department of Labor in determining the community income of the petitioners for 1979. The cost-of-living statistics used were derived from the Bureau of Labor Statistics figures issued for autumn of 1978 for the geographic area of Baton Rouge, Louisiana. The statistics were converted mathematically from expenditures for a family of four to six. Respondent determined that petitioners' community gross income for 1979, based on these statistics as adjusted, was in the amount of $27,389. Under *668 the community property laws of the State of Louisiana, one-half of this amount of community income, as determined by respondent, was attributed to each petitioner. OPINIION 1. The Deficiencies
The first issue for consideration is whether respondent correctly determined deficiencies in petitioners' Federal income taxes for the years 1977 through 1979.With the exception of one income adjustment discussed below, we conclude that he did. Neither of the petitioners, who were married and employed during the years at issue, filed either joint or individual income tax returns for any of those years. [5] Faced with taxpayers who not only failed to file returns, but, upon examination, were, for the most part, uncooperative and failed to provide either testimony or books and records from which a proper determination of income and deductions could be made, respondent reconstructed petitioners' income for the years 1976 through 1979. After reconstructing petitioners' income for 1976 through 1978 using third-party records and for 1979 using cost-of-living figures from the Bureau of Labor Statistics, respondent determined deficiencies in petitioners' income taxes for all those years *669 pursuant to section 6212(a). It is well settled that, in the absence of sufficient books and records, respondent may reconstruct a taxpayer's income by any method which is reasonable. Holland v. U.S.,348 U.S. 121 (1954); Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). It is also well settled that respondent has great latitude in making deficiency determinations "particularly where the taxpayer files no returns and refuses to cooperate in the ascertainment of his income." Giddio v. Commissioner,54 T.C. 1530, 1533 (1970). Based on the evidence produced by respondent, we are convinced that, under the circumstances, his reconstruction of petitioners' income based on third-party records for 1976 through 1978 was reasonable. Because petitioners did not file tax returns for those years and they failed to produce books and records from which a correct determination of taxable income could be made, respondent relied on third-party records, obtained with great difficulty, to *670 reconstruct petitioners' income. Indeed, for 1976 and 1977, respondent's agents painstakingly reconstructed petitioners' income using specific items which they pieced together after what was obviously a careful investigation of third-party sources. We certainly must conclude that such an exhaustive reconstruction is reasonable. Nor are we able to find fault with respondent's use of the bank deposits method in reconstructing petitioners' income for 1978. The bank deposits method has been held to be an acceptable method of income reconstruction. Marcello v. Commissioner,380 F.2d 494, 497 (5th Cir. 1967); Boyett v. Commissioner,204 F.2d 205, 208 (5th Cir. 1953), affg. a Memorandum Opinion of this Court. Petitioners offered no evidence tending to show that any of the bank deposits did not constitute income. Indeed, we are unwilling to find that respondent's use of this method was unreasonable when this method resulted in a determination of an amount of income lower than that for 1976 and 1977, years for which respondent was able to use the more exact "specific items method." In view of the difficulties faced by respondent in attempting to obtain *671 third-party records for 1976 through 1978, we also find reasonable respondent's use of Bureau of Labor Statistics cost-of-living figures in reconstructing petitioners' 1979 income. Use of Bureau of Labor Statistics figures in determining taxable income has been approved by this Court as an acceptable and reasonable method of income reconstruction, particularly in circumstances involving uncooperative taxpayers. Giddio v. Commissioner,supra.[6]
Once respondent reconstructs a taxpayer's income and determines *672 a deficiency in income tax, the burden is on the taxpayer to demonstrate that respondent's determination is erroneous. McAnelly Hardware Co. v. Commissioner,9 B.T.A. 361, 363 (1927; Courtney v. Commissioner,28 T.C. 658, 665 (1957).Petitioners have failed, with the exception of one income adjustment discussed below, to demonstrate that respondent's determination is erroneous. In presenting their case, petitioners produced no credible evidence which would demonstrate to the Court what their income and expenses actually were during the years at issue. Indeed, because of Mr. Drozda's constitutional objections to the income tax, he flatly stated at trial that he could not "produce evidence which would nullify the figures on the deficiency form." As far as we can ascertain from their testimony and briefs, petitioners raise only four issues as substantive challenge to the deficiencies determined by respondent: (1) Whether, in general, compensation in the form of wages, salaries, commissions and fees is taxable as income; (2) Whether respondent correctly determined the nature and amount of gain recognized by petitioners upon the sale of Lot 3 of Block *673 20 of the Oak Park Addition in 1977; (3) Whether respondent correctly determined the amount of gain recognized individually by Mrs. Drozda in 1977 on her sale of a parcel of real estate held by her as separate property; and (4) Whether respondent's use of Bureau of Labor Statistics cost-of-living figures in reconstructing petitioners' 1979 income should be sustained. We will discuss these issues in turn. 2. Taxability of Wages
The major part of Mr. Drozda's testimony at trial was devoted to his position that compensation for labor is not taxable income because it is the result of an even exchange of services for wages. We summarily reject Mr. Drozda's contention as frivolous. The definition of gross income contained in section 61, includes as income subject to the income tax compensation for all types of services such as wages, salaries, commissions, and fees and income derived from business such as Mr. Drozdas's share of partnership income. Reading v. Commissioner,70 T.C. 730, 733 (1978), affd. 614 F.2d 159 (8th Cir. 1980); Crisman v. Commissioner,642 F.2d 1212 (5th Cir. 1981), affg. a Memorandum Opinion of this Court; *674 Lonsdale v. Commissioner,661 F.2d 71, 72 (5th Cir., 1981), affg. a Memorandum Opinion of this Court; Rowlee v. Commissioner,80 T.C. 1111, 1119-1122 (1983), on appeal (2d. Cir. Sept. 13, 1983). [7]
*675 We also sustain respondent's determination with respect to petitioners' community and separate income and his determination that each of petitioners is taxable on one-half of the community income. On brief, Mrs. Drozda contends that she paid taxes on her teaching salary through withholding and that she should not be liable for deficiencies based on Mr. Drozda's income in view of his refusal to pay taxes. We sympathize with Mrs. Drozda's position and acknowledge that in circumstances such as these it is often the tax protester's spouse who suffers the consequences; however, we are constrained to sustain respondent. Under the laws of the State of Louisiana, each party to a marriage has a vested one-half ownership interest in property, including earnings acquired by either spouse during the marriage. La. Civ. Code arts. 2334, 2399, 2402 (repealed 1979), now see La. Civ. Code arts. 2336, 2338 (1971). See United States v. Mitchell,403 U.S. 190 (1971); Hall v. Commissioner,T.C. Memo. 1980-419, affd. 659 F.2d 1073 (5th Cir. 1981). Because the earnings of each spouse during the term of the *676 marriage constitute community property, respondent properly allocated to Mrs. Drozda one-half of Mr. Drozda's earnings. [8]
3. Gain On the Sale of the Oak Park Lot
Using land conveyance records, respondent determined that petitioners purchased a parcel of real estate, designated as Lot 3 of Block 20 of the Oak Park Addition, on December 19, 1975 for $4,800 and sold it on August 31, 1977 for $10,500, *677 for a gain of $5,700.Respondent further determined that the property had been held primarily for sale to customers in the ordinary course of Mr. Drozda's real estate business and thus, the gain should be taxable to petitioners as ordinary income rather than as a capital gain. Section 1221. Mr. Drozda acknowledged at trial that gain on the sale of this property was taxable; however, he takes issue with the nature and amount of gain determined by respondent. At trial, Mr. Drozda presented vague testimony and a written summary prepared by him regarding certain purported expenditures incurred by him in making repairs to the building on Lot 3. Mr. Drozda contends that his basis in the property should be adjusted upward to reflect these expenditures. Section 1016; sec. 1.1016-2, Income Tax Regs. Although we find Mr. Drozda's testimony and written summary to be somewhat vague, we accept his testimony that he did in fact incur certain expenses in fixing up the house on that property such as putting on a new roof and making kitchen improvements which would properly be chargeable to capital account. Using our best judgment, we hold that petitioner incurred expenses of $1,000 in making *678 these improvements and that his basis in the property should be increased by that amount. Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), affg. in part and revg. in part 11 B.T.A. 743 (1928). Thus, petitioners' gain on the sale should be $4,700. Petitioner also contends that he held Lot 3 for investment purposes only and, therefore, any gain recognized on the sale should be taxed as a capital gain rather than as ordinary income. Given the facts of record, we are unable to conclude, based only on Mr. Drozda's Bald assertion, that he held Lot 3 for investment purposes only. We agree with respondent that Mr. Drozda held the property primarily for sale to customers in the ordinary course of his real estate business. The question of whether real estate is held primarily for sale to customers in the ordinary course of business is one of fact to be determined on a case-by-case basis. Phillips v. Commissioner,24 T.C. 435, 445 (1955); Riley v. Commissioner,37 T.C. 932, 938 (1962), affd. 328 F.2d 428 (5th Cir. 1964). Factors to be considered in making this factual determination include the taxpayer's *679 stated purpose in acquiring, holding, and disposing of the property; the activities and degree of involvement by petitioner with respect to any improvements made and the disposition of the property; the frequency and continuity of sales of other real estate; the vocation of the taxpayer; and the length of time for which the property has been held by the taxpayer. The burden of proof rests with petitioners. Application of the facts of record to the foregoing factors lead us to conclude that Mr. Drozda did in fact hold Lot 3 primarily for sale to customers in the course of his business. In contrast to Mr. Drozda's unsupported assertion that he held Lot 3 for investment, respondent points to Mr. Drozda's vocation as a real estate sales manager, a series of some five real estate estate purchases and sales made by Mr. Drozda from 1966 through 1976, [9] and the improvements made to Lot 3 as claimed by Mr. Drozda. We agree with respondent that all of these factors indicate that petitioner held Lot 3 not for investment, but as part of his real estate business. The issue is close. If the burden of proof were on respondent, petitioner might prevail. But it is not. Mr. Drozda has simply *680 not met his burden of proving that Lot 3 was held for investment. 4. Gain on the Sale of Mrs. Drozda's Separate Propertu
Mrs. Drozda does not challenge respondent's determination that on July 25, 1977, she sold for $23,000 a parcel of real estate acquired by her before her marriage and, therefore, held as her separate property. She does, however, *681 raise an issue with respect to the appropriate basis to be used in computing her gain on the property. Respondent determined Mrs. Drozda's basis using land conveyance records which indicate that Mrs. Drozda purchased a parcel of real estate before her marriage on January 17, 1964 for a price of $75.00.This parcel was later sold in two different transactions. The first portion of the parcel was sold in 1971 for $6,500. The sale of the second portion of the parcel here at issue occurred in 1977 for $23,000. Respondent allocated the basis of $75.00 of the parcel as a whole to the two portions of land sold according to the percentage which the sale price of each portion bore to the total sale price. Thus, respondent determined that petitioners' basis in the 1977 sale was no more than $58.50. [10]
At trial, Mrs. Drozda maintained that the property *682 acquired for $75.00 in 1964 was not the property which she sold in 1977 and that the property at issue was received by her as a gift in 1942. Mrs. Drozda, however, presented no evidence tending to establish a basis in the property, assuming she acquired it by gift, higher than that determined by respondent. The mere fact that the property may have been a gift and as such would carry with it the donor's basis for purposes of computing gain pursuant to section 1015, does not establish what in fact the donor's basis was in the absence of any evidence produced by Mrs. Drozda. Further, we are satisfied that the property sold by Mrs. Drozda in 1977 was in fact a portion of the property she acquired in 1964 for $75.00 in view of the fact that the description of the property in the 1977 deed of sale is sufficiently similar to that in Mrs. Drozda's original 1964 deed of purchase. Thus, in the absence of any evidence which would indicate otherwise, we must sustain respondent's determination of basis and determination of gain derived therefrom. 5. Respondent's Use of Bureau of Labor Statistics Figures in Reconstructing Petitioners' 1979 Income
Mr. Drozda vigorously objects *683 to respondent's use of Bureau of Labor Statistics cost-of-living figures in reconstructing petitioners' community income for 1979. We are aware that the figures may be too high or too low in an individual case. The purpose of the trial was to permit petitioners to prove the correct amount of their income. Mr. Drozda presented certain data purportedly issued by the United States Department of Commerce which indicated that for 19798 the average annual total compensation in the real estate industry was $14,365 rather than the $27,389 based on the Bureau of Labor Statistics figures as determined by respondent. Mr. Drozda presented this data with the suggestion that respondent should have utilized this information rather than the Bureau of Labor Statistics figures in reconstructing his income. Mr. Drozda's mere offer of this statistical data in the absence of any testimony with respect to what his actual income and expenditures were for 1979 is not enough to satisfy his burden of proving that respondent's income reconstruction was erroneous. Petitioner would have us approve the use of one type of statistics over another in order to reduce, in his favor, the amount of reconstructed *684 income. This we will not do. As we stated above, respondent was forced to reconstruct petitioners' 1979 income using the Bureau of Labor Statistics figures because petitioners did not file a return for 1979 and failed to provide information sufficient to enable respondent to make a determination regarding their taxable income. These facts coupled with the difficulty encountered by respondent's agents in obtaining third-party records for 1976 through 1978 prompted respondent to use this method of income reconstruction. The statistics more favorable to petitioner do not show that respondent's income reconstruction figures were erroneous in petitioners' case. Our conclusion is buttressed by the fact that the income figure for 1979 of $27,389 as determined by respondent is much more consistent with the 1976 and 1977 figures of $35,834 and $27,727 which were derived by respondent using the more exact "specific items" method of income reconstruction. In summary, with the exception of the adjustment discussed in issue No. 2 above, we sustain the deficiencies as determined by respondent. 6. The Additions to Tax
A. Section 6651(a)
Respondent has determined that petitioners' *685 failure to file returns for any of the years involved was due to willful neglect and not due to reasonable cause; therefore, he has determined that both petitioners are liable for the additions to tax under section 6651(a). The burden is on petitioners to establish the existence of reasonable cause for their failure to file their returns when due. Richardson v. Commissioner,72 T.C. 818, 827 (1979); Hatfield v. Commissioner,68 T.C. 895, 898 (1977). Petitioners have failed to establish reasonable cause for failure to file returns for the years at issue, with the exception of Mrs. Drozda's failure to file for 1976 as discussed below, and, thus, we sustain the section 6651(a), additions to tax with that one exception. Because the positions of Mr. and Mrs. Drozda with respect to the reasonable cause issue are different, we will discuss the arguments of each petitioner in turn. Mr. Drozda admits that he did not file income tax returns for any of the years in question and stated as his reason that he did not want to waive his constitutional rights, especially his privilege against self-incrimination. Such a reason for failure to file a return does *686 not constitute good cause. It is well settled that requiring taxpayers to file tax returns does not violate the privilege against self-incrimination. United States v. Sullivan,274 U.S. 259 (1927). [11] Further, lofty challenges to the income tax system do not constitute reasonable cause for failure to file an income tax return. Edwards v. Commissioner,680 F.2d 1268, 1270 (9th Cir. 1982). Also see Crisman v. Commissioner,642 F.2d 1212 (5th Cir. 1981); and United States v. Moore,627 F.2d 830, 833 (7th Cir. 1980). Mr. Drozda's failure to file returns for the years at issue was deliberate and in open disregard of the statute and regulations, and thus, was not due to reasonable cause. *687 Mrs. Drozda, on the other hand, does not espouse the protest-type views of Mr. Drozda. Her stated reasons for her failure to file income tax returns are as follows: For 1976, she signed what she though was a joint return and did not realize that it was not filed by Mr. Drozda; for 1976 and 1977, she did not attempt to file individual returns because she relied on the advice of other people who told her that because she was married she had to file joint returns with her husband; for 1978, she intended to file an individual return and, in fact, she signed a blank Form 1040A, but she relied on her husband to fill it out and file it; for 1979, she did not file because she heard nothing about her 1978 return. For 1976, Mrs. Drozda's failure to file a return was due to reasonable cause under the circumstances.Mr. Drozda presented to Mrs. Drozda for her signature what she though was their joint income tax return for that year, and she signed it. Up to this time, Mr. Drozda had apparently complied with the laws on filing returns. We accept Mrs. Drozda's testimony that she believed that Mr. Drozda had filed a completed joint return for that year; thus, we find her failure to file for *688 1976 due to reasonable cause. Although we sympathize with Mrs. Drozda and acknowledge that, for the most part, she has been entangled with this case and charged with income tax deficiencies because of the operation of the community property laws, we cannot find that her stated reasons for her failure to file returns for the years 1977 through 1979 constitute reasonable cause. Mrs. Drozda did not identify the individuals whose advice she followed with respect to her belief that she was unable to file individual returns for 1976 and 1977. There is nothing in the record to show that she obtained this advice from qualified tax counsel, or, in fact, that she ever consulted counsel to determine her obligations. Her mere uninformed, unsupported belief that she was unable to file, does not constitute reasonable cause. Heman v. Commissioner,32 T.C. 479, 490 (1959), affd. 283 F.2d 227 (8th Cir. 1960). For 1978, we accept Mrs. Drozda's testimony that she intended to file an individual tax return; however, we are constrained to find that the document which was filed on her behalf did not constitute a valid return. Thus, she did not file a return for 1978. *689 As noted in our Findings of Fact above, the 1978 Form 1040A signed by Mrs. Drozda and filed on her behalf provided incomplete information, asserted numerous constitutional objections, ans was not signed under penalty of perjury in that the jurat directly above Mrs. Drozda's signature was obliterated. A document, not signed under penalty of perjury, does not constitute a valid return. Cupp v. Commissioner,65 T.C. 68, 78, affd. 559 F.2d 1207 (3d Cir. 1977); White v. Commissioner,72 T.C. 1126, 1130 (1979). Although we accept Mrs. Drozda's testimony that she did not fill in the constitutional objections or obliterate the "penalty of perjury" language above her signature, we must still find that Mrs. Drozda's failure to file a valid return for 1978 was not due to reasonable cause. Mrs. Drozda testified that she chose to file an individual return because she did not agree with her husband's tax protest views. Yet, she chose to rely on Mr. Drozda to fill out and file her return. Given her knowledge of Mr. Drozda's tax protest activities, [12] we agree with respondent that her reliance on her husband to fill out and file her return was *690 not reasonable and, thus, her failure to file was not due to reasonable cause. Nor are we able to find reasonable Mrs. Drozda's failure to file for 1979 merely because she did not hear from the respondent with respect to her 1978 return. B. Section 6653(a)
In view of our holding above that petitioners are liable for the deficiencies determined by respondent and, therefore, they underpaid their income taxes for the years in question, we also sustain, with the exception of Mrs. Drozda's underpayment for 1976, respondent's determination that part of their underpayment was due to negligence or intentional disregard of the revenue laws within the meaning of section 6653(a). Again, the burden is on petitioners to prove that respondent erred in his determination. Enoch v. Commissioner,57 T.C. 781, 802 (1972); Foster v. Commissioner,80 T.C. 34, 237 (1983). Mr. Drozda has failed to carry his burden in this regard. He admitted that he deliberately failed to file tax returns. Although at trial he did admit to the *691 proper taxability of certain transactions for the years at issue, he did not pay any income taxes during the years at issue. We conclude that his actions constitute intentional disregard of the statute and regulations and that the section 6653(a) additions to tax apply. See Hatfield v. Commissioner,68 T.C. 895, 898 (1977). With regard to Mrs. Drozda, she is not liable for the negligence addition to tax for 1976 because she signed a document which she believed was going to be filed by her husband as their joint return. For 1977 through 1979, however, we hold that Mrs. Drozda was negligent in the underpayment of her tax. For 1977, Mr. Drozda did not present Mrs. Drozda with a return to sign. She had no reason to assume, therefore, as she had in 1976, that a return would be filed for her. Although it is true that she paid some taxes through withholding, it is also a fact that she sold some property in 1977 and realized a gain which she should have known would be taxable. For 1978, we find that her reliance on her husband, known by her to be a tax protestor, to file her return was also negligent. For 1979, her underpayment of tax merely because she had not *692 heard about her 1978 refund claim is also negligence. C. Section 6654
Section 6654 provides for an addition to tax in the case of the underpayment of estimated tax. This section, subject to specific limited exceptions not applicable here, is mandatory and extenuating circumstances are irrelevant. Estate of Roe v. Commissioner,36 T.C. 939, 952 (1961); Estate of Ruben v. Commissioner,33 T.C. 1071 (1960).We must, therefore, sustain this addition to tax with respect to both petitioners. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Respondent has conceded that Mrs. Drozda did not realize a long-term capital gain in the amount of $3,241.75 in 1976 upon the sale of real estate held by her as separate property as originally determined in the notice of deficiency issued to her. Further, respondent concedes that following expenses incurred by petitioners to be divided equally between them pursuant to the community property laws of the State of Louisiana: ↩
Medical expenses:
1976
$ 464
1977
2,200
1978
1,160
1979
780
Interest:
1976
$1,360
1977
3,700
1978
2,740
1979
3,600
Taxes:
1976
$ 520
1977
520
Contributions:
1976
$ 264
1977
274
3. Not included here is the amount of $3,241.75 originally attributed to Mrs. Drozda as long-term capital gain for 1976. This amount has been conceded by respondent.↩
4. Mrs. Drozda did provide respondent's agents with a copy of her individual Form W-2 for 1979. This information, however, would have been insufficient as a basis for a determination of income for the community given the amounts of community income determined for 1976 through 1978.↩
5. See discussion, infra,↩ with respect to Mrs. Drozda's unsuccessful attempt to file a return for 1978.
6. This method of income reconstruction has been held reasonable in a series of memorandum decisions of this Court, particularly in instances involving tax protesters, as does the present case. See Kindred v. Commissioner,T.C. Memo. 1979-457, affd. 669 F.2d 400 (6th Cir. 1982); Funk v. Commissioner,T.C. Memo. 1979-426, affd. 672 F.2d 922 (9th Cir. 1982); Howarth v. Commissioner,T.C. Memo. 1981-393; Denson v. Commissioner,T.C. Memo. 1982-360; Wheeling v. Commissioner,T.C. Memo. 1982-246, affd. 709 F.2d 1512↩ (6th Cir. 1983).
7. We note that respondent's determination of Mrs. Drozda's salary for 1976 is not supported by any documentary evidence of record such as the duplicate Form W-2 which documents Mrs. Drozda's salary for 1977.Mrs. Drozda, however, testified that she was a substitute teacher during the years at issue, and because she presented no evidence which would indicate that her earnings were other than as determined by respondent, we sustain respondent's determination. In addition, on brief, Mr. Drozda disputed respondent's determination that for 1976 he had income both in the form of commissions and fees in the amount of $14,840.39 and in the form of salary and interest in the amount of $14,895.53. Mr. Drozda claims that this is the same income item; that there was a typographical error made by his partnership in transferring the amount of salary from Form 1065 to Form 1099.We do not agree. In our view, commissions and fees received by Mr. Drozda were separate from the salary and interest paid to him. On the Partnership Form 1065 submitted by Mr. Drozda's partnership, Ready Realty Company, commissions paid is a separate line item from salary and interest payments. Thus, we conclude that such payments were separate forms of payment to Mr. Drozda.↩
8. Mrs. Drozda did not challenge respondent's determination that her 1977 sale of property constituted separate income to her because she acquired the property prior to her marriage. We sustain respondent's determination that all gain on this sale is properly chargeable to Mrs. Drozda.In Louisiana, proceeds received upon the sale of separate asserts retain their classification as separate property. See Succession of Russo,246 So. 2d 26 (La. Ct. App. 1971), writ denied 258 La. 759, 247 So. 2d 861 (1971). Thus, for Federal income tax purposes, the seller of separately held property must recognize the full gain upon the sale of property. See Merren v. Commissioner,51 F.2d 44 (5th Cir. 1931), affg. 18 B.T.A. 156↩ (1929).
9. Respondent introduced land conveyance records which demonstrate Mr. Drozda's involvement in the following real estate transactions: (1) Purchase on Oct. 18, 1966 and sale on Dec. 18, 1972 of property in the South Highland subdivision; (2) Purchase on May 10, 1974 and sale on Oct. 20, 1975 of a lot on the University Place plat: (3) Sale of property on July 9, 1971 of property in Calcasieu Parish; (4) Purchase on Oct. 21, 1976 of a lot in the Cecil McDonald subdivision; (5) Purchase on Aug. 13, 1970 of property in the Beverly Hills subdivision. These transactions were the only ones respondent was able to document. In view of Mr. Drozda's efforts to "stonewall" the Internal Revenue Service throughout its investigation, the Court has no way of knowing whether Mr. Drozda made other sales of real estate property during that period.↩
10. Respondent allocated the basis as follows: ↩
1976 sale price (portion No. 1)
$ 6,500
1977 sale price (portion No. 2)
23,000
Total sale price
$29,000
Basis Percentage portion No. 1
$ 6,500 = 22 percent
$29,500
Basis Percentage portion No. 2
$23,000 = 78 percent
$29,500
78 percent of $75.00 = $59,50
11. At trial, respondent's counsel advised the Court and petitioner that there exists no present or contemplated criminal investigation of petitioner. Mr. Drozda offered no evidence which would contradict the statements of respondent's counsel or would lead us to conclude that there is a substantial and real risk that he would be prosecuted. See Rechtzigel v. Commissioner,79 T.C. 132, 136 (1982), affd. 703 F.2d 1063↩ (8th Cir. 1983).
12. By 1978, as distinguished from the situation in 1976, Mr. Drozda's tax protest activities were well known by Mrs. Drozda.↩