CARTER, Judge:
This writ is before us on remand from the Louisiana Supreme Court for argument and opinion.
Familiarity with the chronology of events will facilitate an understanding of our resolution of the issues. On January 7, 1982, and on April 1, 1982, newspaper articles appearing in the Baton Rouge Morning Advocate indicated that E.L. “Bubba”-Henry may have violated certain provisions of the Code of Governmental Ethics. After publication of the newspaper articles, the Commission on Ethics for Public Employees resolved to conduct a private investigation to elicit evidence in order to determine whether to conduct a public hearing, in accordance with its authority under the Code of Governmental Ethics, LSA-R.S. 42:1101 et seq. At its February 28, 1983 meeting, the Commission instructed its staff' to continue its investigation at a “closed executive session.” This session was held on March 31, 1983, and a number of witnesses, including Henry, were heard. Henry requested that he and his counsel be allowed to cross-examine the witnesses. This request was denied by the Commission.
After the “closed executive session,” E.L. “Bubba" Henry was charged with violating several sections of the Code of Ethics, and a public hearing was scheduled for July 25, 1983, to further investigate those charges. The specific violations charged are set forth in a letter from the Commission to Henry, dated May 17, 1983, as follows:
*145 'I.
That E.L. ‘Bubba’ Henry violated Section 1111 C(2)(d) of the Code of Governmental Ethics (LSA-R.S. 42:1111 C(2)(d) by receiving a thing of economic value, $120,-000.00, in consideration of services rendered (i.e., the sale of a house and the property on which it is situated, which house and property are located on Cecilia Street, in Jonesboro, Louisiana, on February 13, 1982) to Mr. Hollis Graham, from whom he was prohibited from receiving a ‘gift’ under Section 1115 of the Code of Governmental Ethics (LSA-R.S. 42:1115) (and for whom he is therefore prohibited from performing ‘services’ for compensation) by virtue of the fact that Mr. Hollis Graham, as the owner of 71% of the stock of Lincoln Builders of Ru-sten, Inc., himself had a ‘contractual or other business or financial relationship’ with Mr. Henry’s agency, the Louisiana Division of Administration, and also had ‘interests which may [have been] substantially affected by the performance or nonperformance of [Mr. Henry’s] official duty.’
II.
That E.L. ‘Bubba’ Henry violated Section 1112 B(5) of the Code of Governmental Ethics (LSA-R.S. 42:1112 B(5)) by, on September 19, 1980, approving the Division of Administration’s award of a contract in the amount of $2,471,000.00 on the Northeast Louisiana University Baseball Stadium Project, in which transaction he knew that Mr. Hollis Graham had a substantial economic interest as the 71% owner of Lincoln Builders of Ru-sten, Inc., to whom the contract would be awarded, and at a time at which Mr. Henry was a party to an existing contract with Mr. Graham due to Mr. Graham’s having made a $10,000.00 loan to Mr. Henry is connection with Mr. Henry’s 1979 gubernatorial campaign which, at that time, had not been repaid..
III.
That E.L. ‘Bubba’ Henry violated Section 1112 B(5) of the Code of Governmental Ethics (LSA-R.S. 42:1112B(5)) by participating, as the Commissioner of Administration, in transactions relating to the possible lease of property located at the ‘old’ Chenault Air Force Base in Lake Charles from Mr. Harry Hollins to the State of Louisiana {i.e., the Department of Labor and the Department of Health and Human Resources) at a time at which Mr. Henry was a party to an existing contract with Mr. Hollins by virtue of Mr. Hollins having made a loan of $50,-000.00 to Mr. Henry in connection with Mr. Henry’s 1979 gubernatorial campaign.
IV.
That E.L. ‘Bubba’ Henry violated Section 1116 of the Code of Governmental Ethics (LSA-R.S. 42:1116) by his actions in the events described in III above.”
Henry then applied for supervisory writs to the First Circuit Court of Appeal, alleging the following errors:
1. The Ethics Commission erred in denying applicant a copy of the transcript of the March 31, 1983, “closed executive session” at which testimonial evidence relating to the charges in this matter was heard by the Commission.
2. The Commission erred in denying applicant the right to be present, with his attorney, at the “closed executive session,” the right to cross-examine witnesses, and the right to introduce evidence to explain or rebut evidence presented against him.
3. The Commission erred in permitting the Commission’s staff, which had conducted an investigation, to make ex parte comments and arguments on the law and fact directly to the Commission without affording applicant a copy of all such comments so that he could rebut, explain, or argue against them.
4. The Commission has erred by adopting a procedure wherein the Commissioners themselves sit as a “grand *146 jury,” conduct an investigation in secret, issue charges, and then proceed to act as judge all in the same case.
5. The Commission erred in refusing to turn over to petitioner any information which was “favorable” to applicant within the meaning of Brady v. Maryland, 373 U.S. 83, [83 S.Ct. 1194] 10 L.Ed.2d 215 (1963).
Henry also moved for the issuance of an order staying all proceedings by the Commission against him, pending consideration of the application for supervisory writs, which stay order was granted.
The First Circuit Court of Appeal granted Henry’s writ application finding that the proceedings before the Commission constituted denial of due process. The court ordered that the Commission provide Hen: ry “with a verbatim transcript of, and all documentation considered at, any and all meetings at which primary evidence (as opposed to solely the hearsay results of an investigation) was received, including specifically the meeting of March 31, 1983” and that, within a reasonable time after compliance with the aforementioned order, the Commission “reconduct such meeting(s) to the extent demanded by relator, making available to him for purposes of cross-examination and rebuttal all primary evidence adduced at such meeting(s) and allowing him the opportunity to argue in rebuttal to any arguments proposed in opposition to him, and specifically according him the right to counsel throughout all such proceedings.” In all other respects, the application for writs was denied.[1]
The Louisiana Commission on Ethics for Public Employees applied for Writs of Certiorari and Review to the Louisiana Supreme Court.[2] The Supreme Court granted the Commission’s application, set aside the ruling of the Court of Appeal, and remanded the matter for argument and opinion.
ASSIGNMENTS OF ERROR NOS. 1 & 2
To resolve the issues presented, the following questions of law must be examined:
A. Do the provisions of LSA-R.S. 42:1141(D)[3] violate due process?
This Court recently answered this question in the negative in Com’n on Ethics for Public Employees v. IT Corp., 423 *148 So.2d 695 (La.App. 1st Cir.1982).[4] In that case we held that the procedures and protections afforded an investigated party under LSA-R.S. 42:1141(D) do not deny due process. Therefore, the statute, on its face, does not violate due process under the federal or the Louisiana constitution.
B: Did the procedure used by the Commission in the case sub judice violate due process?
The answer to this question depends on whether the proceeding conducted before the Commission on March 31, 1983, was a private hearing or a private investigation. The distinction is crucial because LSA-R.S. 42:1141(D)(6) affords full due process rights at any hearing and LSA-R.S. 42:1141(D)(13) allows the accused party the right to obtain a transcript of the proceedings of a private hearing. However, the rights of a person who is the subject of an investigation are limited to: (1) the right to counsel, LSA-R.S.. 42:1141(D)(7)[5] and, (2) the right to require the Commission to make an official determination of its findings and to publically disclose such findings, LSA-R.S. 42:1141(D)(11) and (13)(b)[6].
Henry contends that the “closed executive session” which was conducted on March 31, 1983, was a private hearing under LSA-R.S. 42:1141 and that he had a statutory right to participate in the proceeding and to be furnished a copy of the transcript of such proceeding.
The Commission maintains that the “closed executive session” was a private investigation within the meaning of LSA-R.S. 42:1141 and denied Henry the right to participate in the “closed executive session” and the right to a copy of the transcript of the proceedings. The Commission contends that because the proceeding was merely an investigation, Henry did not have a right to participate in the investigation by the Commission and that it is expressly prohibited from disclosing the contents of such investigations.
1. Was the “closed executive session” conducted on March 31, 1983, a private hearing or a private investigation?
In In Re Theriot, 257 So.2d 770 (La.App. 1st Cir.1972), this court clearly set forth the distinction between investigations and hearings.[7] Investigations are *149 “carried out by the Commission personnel” and contemplate hearsay results, while hearings contemplate proceedings held by the Commission to receive “primary evidence, testimonial or otherwise, rather than the hearsay results” of investigations. In Re Theriot, supra.
At the “closed executive session” conducted on March 31, 1983, the Commission heard testimony from Henry and received testimony from other witnesses as well. Because primary evidence was received by the Commission at its session on March 31, 1983, it is clear that the “closed executive session” constituted a hearing. The Commission cannot call this hearing an investigation to avoid affording Henry the due process rights to which he is clearly entitled.
The Commission strenuously argues that hearings are contradictory proceedings and that because the “closed executive session” was not contradictorily held, it was not a hearing. We find no merit in the Commission’s argument. The determination that a proceeding is a hearing is not dependent on whether it is contradictorily held. Furthermore, in the instant case, the only reason the hearing was not contradictory is because the Commission did not permit Henry to participate.
The Commission further argues that the purpose of a proceeding should be determinative of whether the proceeding is a. hearing or an investigation. The Commission contends that because the “closed executive session” was held to further investigate the allegations of misconduct, the proceeding was merely an investigation. We find no merit in this argument. The purpose of a proceeding does not determine its nature. If witnesses are called to testify before the Commission and primary evidence is received, the proceeding is a hearing even if held for investigative purposes. In Re Theriot, supra.
The Commission points to LSA-R.S. 42:1141(D)(2) and the power therein to administer oaths, subpoena witnesses, take evidence and require the production of records as support that they can perform these acts and hear primary evidence in an investigation. We do not interpret the statute that broadly. These acts can be performed by the staff. As a matter of fact, LSA-R.S. 42:1134 provides that “all investigations ... shall be conducted by the staff of the Department of Civil Service, under the authority and direction of-the ethics body.”
If LSA-R.S. 42:1141(D)(2) were to be as broadly construed as urged by the Commission, it would be in conflict with other provisions of the statute, especially LSA-R.S. 42:1141(D)(6), and violative of the due process provisions of the Federal and State Constitutions.
The Commission cannot avoid the ruling of In Re Coppola,[8] 222 So.2d 314 (La.App. *150 1st Cir.1969), by using the term “investigation” in lieu of what the proceeding is in reality, i.e. a “hearing.” Therefore, any time the Commission “meets” and receives primary evidence, regardless of the stated purposes, due process must be afforded the subject of the proceeding. See In Re Coppola, supra.
' 2. Did the Commission comply with LSA-R.S. 42:1141(D)?
Based upon our finding that the “closed executive session” was a heating, Henry had the right to have legal counsel, to cross-examine witnesses, to call witnesses, and to present evidence in his own behalf. LSA-R.S. 42:1141(D)(6). The Commission, however, did not allow Henry to participate in the hearing and, therefore, violated the procedures outlined in the Code of Governmental Ethics. Additionally, LSA-R.S. 42:1141(D)(13) requires the Commission upon request to furnish Henry with a copy of the transcript of the private hearing, which the Commission has refused to do, violating that provision of the Ethics Code.
In essence, the Commission in the case sub judice partially tried Henry in secret and now claims “an absolute statutory right” to try him again in public. In so doing, not only have the express provisions of the Ethics Code been violated, but Henry has been denied basic fundamental rights of due process of law, viz. the right to confront one’s accusors, the right to be apprised of inculpatory and exculpatory evidence, the right of cross-examination, and the right to be tried openly by a fair and impartial tribunal. There is some merit to Henry’s strenuous contention that such action as has occurred in the instant case is more akin to “star chamber proceedings” than justice.
CONCLUSION
For the above reasons, our order dated September 7, 1983, ife herein reinstated, and, IT IS ORDERED that the Commission on Ethics for Public Employees:
1. Provide Henry with a verbatim transcript of the hearing of March 31, 1983; and
2. Within a reasonable time after compliance with the above order, reconduct such he'aring(s) to the extent demanded by Henry, making available to him for purposes of cross-examination and rebuttal all primary evidence adduced at such hearing(s) and allowing him the opportunity to argue in rebuttal to any arguments proposed in opposition to him, and specifically according him the right to counsel throughout all such proceedings.
In all other respects, the application for writs is denied. The stay order previously issued by this court is continued in effect until this judgment becomes final.
WRIT GRANTED IN PART AND DENIED IN PART.

. The Commission was the only party to apply for writs to the Supreme Court, therefore, only those portions of the original writ application which were granted arc properly before us.

. Counsel for the Commission, in his application to the Louisiana Supreme Court, questioned the procedural basis employed by this Court in handling the original writ application. He appears to object to only two judges acting on the writ application and to the ex parte nature of the order, citing Art. V, Sec. 8 A of the Louisiana Constitution and Rule 4-7 of the Uniform Rules — Courts of Appeal.
Although this issue is not squarely before the Court in the case sub judice, we feel compelled to set forth that under Art! V, Sec. 2 .of the Louisiana Constitution, a single judge, subject to review by the whole court, has authority to issue such an order and even issue an instanter writ where the circumstances and interest of justice require such action. Rule 4-6 of the Uniform Rules — Courts of Appeal.

. LSA-R.S. 42:1141(D) provides:
D. Procedure. (1) Any public servant or other person who is to be the, subject of a public or private hearing shall be given written notification of the charges against him and of the time and place such hearing is to be held. Such notification shall not be less than sixty days prior to the date set for the hearing. Upon the request of a public servant or other person charged, the hearing may be held sooner.
(2) For purposes of an investigation or a hearing, each ethics body may administer oaths and affirmations, subpoena witnesses, compel their attendance, lake evidence, and require the production of any records which the ethics body deems relevant or material to the investigation or hearing. Such attendance of witnesses and the production of any such records may be required at any place designated by the ethics body at no cost to the public servant or other person charged as permitted by the rules of the ethics body.
Each ethics body shall adopt rules providing for discovery consistent with Chapter 3 of Title III of Book II of the Code of Civil Procedure, to the extent and in the manner appropriate to its proceedings.
(3) In case of contumacy or refusal to obey a. subpoena issued to any public servant or other person, any district court of this stale within the jurisdiction of which the inquiry is carried on, or within which said public servant or other person is found, resides, or transacts business, upon application by the ethics *147 body shall have jurisdiction to issue to such public servant or other person an order requiring him to appear before the ethics body and to produce evidence, if so ordered, or to give testimony touching on the matter under consideration. Any failure to obey such order of the court may be punished by the court as a contempt thereof.
(4)(a) If any public employee shall willfully refuse or fail to appear before an ethics body, or any court authorized to conduct any hearing or inquiry pertaining to the provisions of this Chapter, or having appeared shall refuse to testify or answer any question specifically, directly, and narrowly relating to the performance of his official duties on the ground that his testimony or answers would tend to incriminate him, or shall refuse to accept immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry, such action shall be grounds for dismissal or forfeiture of his office or position and ii dismissed, he shall not be eligible thereafter for employment by the governmental entity for a period of five years, unless such reemployment is authorized by a majority vote of the membership.
(b) If any elected official shall willfully refuse or fail to appear before an ethics body, or any court authorized to conduct any hearing or inquiry pertaining to the provisions of this Chapter or having appeared shall refuse to testify or answer any question specifically, directly, and narrowly relating to the performance of his official duties on the ground that his testimony or answers would tend to incriminate him, or shall refuse to accept immunity from prosecution on account of any matter about which he may be asked to testify at such hearing or inquiry, such action shall be grounds for the board to prescribe the penalties provided by R.S. 42:1153(A) against such elected official.
(5) No disciplinary action shall be taken against a public servant or person by an ethics body unless it is determined by a majority vote of its membership that such public servant or other person has violated a provision of this Chapter within its jurisdiction at a public hearing conducted for that purpose.
(6) Any public servant or other person who is the subject of any hearing may have legal counsel, cross examine witnesses, call witnesses, and present evidence in his own behalf.
(7) Any public servant or other person who is the subject of any investigation shall be advised of his right to have an attorney present.
(8) Any witness other than the person who is the subject of the investigation or hearing may be accompanied by counsel at investigations or hearings, which counsel may advise the witness of his rights, subject to reasonable limitations to prevent obstruction of or interference with the orderly conduct of the investigation or hearing. His counsel may also submit proposed questions to be asked for his client.
(9) Any witness at any investigation or hearing, subject to rules and regulations promulgated by the ethics body, shall be entitled to a copy of his testimony when the same becomes important and relevant in a criminal proceeding or subsequent investigation or hearing provided that the furnishing of such copy will not prejudice the public safety or security.
(10) In making any official determination of whether any provision of this Chapter has been violated, the ethics body may only consider testimony given under oath and transcribed verbatim by a reporter.
(11) If the investigation of an ethics body fails to disclose any substantial evidence to support the charges, the ethics body shall make an official determination of its findings and thereupon close its file on the charges. The public servant or other person charged may require the ethics body to make an official determination of the validity of the charges against him.
(12) The records of each ethics body prepared or obtained in connection with investigations and private hearings conducted by the ethics body, including all extracts of minutes and resolutions adopted in connection therewith, shall be deemed confidential and privileged, except thal.such records shall be available to each member of the ethics body upon request. Except as provided in this Paragraph and in R.S. 42:1111(E)(2)(c), all records, including the results and conclusions reached in connection with any investigation or hearing, shall be public.
(13) It shall be a misdemeanor, punishable by a fine of not more than two thousand dollars or imprisonment for not more than one year, or both, for any member of an ethics body, its counsel, other employee, or any other person, to make public the testimony taken at a private investigation or private hearing of the ethics body or to make any public statement or give out any information concerning a private investigation or private hearing of the ethics body without the written request of the public servant or other person investigated. Upon receipt of a written request by the public servant or person charged, the ethics body shall (a) furnish the requestor with a certified copy of the entire proceedings of a private hearing, including a verbatim transcript of all testimony considered at such hearing, and (b) make public the findings of any private investigation or hearing in connection with the charges.
(14) Repealed by Acts 1980, No. 578, § 1.
*148 E. The provisions of R.S. 42:4.1 through R.S. 42:10 shall not apply to investigations and hearings conducted by an ethics body. Acts 1979, No. 443, § 1, off. April 1, 1980. Amended by Acts 1980, No. 579, § 1; Acts 1980, No. 580, § 1.

.Counsel for the Commission argues in brief that this Court rejected identical due process arguments in the IT Corp. case, in which he claims "the Court of Appeal, yielding to the representations contained in the Commission's brief,” permitted the Commission to exclude IT Corp.’s representatives from proceedings wherein the Commission received direct evidence. Counsel expressly attributes the contrary results reached in this case to: (1) a different panel of the court; (2) the abbreviated panel, who ruled on the original application, being unfamiliar with the ruling in the IT Corp. case; or (3) an implied overruling of our previous holding in the IT Corp. case.
A careful reading of the decision in the IT Corp. case clearly shows that any "hearings” conducted by the Commission were on exceptions filed on behalf of the IT Corporation. Hearings on exceptions arc not hearings, which assist the Commission in determining whether a violation of the Code of Governmental Ethics has occurred, and as such are not subject to the procedures outlined in LSA-R.S. 42:1141(D).

. In brief, the Commission argues that LSA-R.S. 42:1141(D)(8) allows witnesses to be called at investigations or hearings. That section, however, is not a grant of authority to the Commission, but is an acknowledgment by the legislature that not only do the subjects of investigations or hearings have rights (See 1141(D)(7 & 8), but witnesses at these proceedings arc also entitled to be accompanied by counsel.

. In brief, the Commission argues that Henry is entitled to only "a copy of his testimony" citing LSA-R.S. 42:1141(D)(9). That section of the Ethics Code, however, clearly applies to witnesses at investigations and hearings and docs not apply to the person who is the subject of the investigation or hearing. When one is the subject of a hearing or investigation, LSA-R.S. 42:1141(D)( 13) delineates his right to a copy of the transcript.

. The Commission strenuously argues that In Re Theriot is inapplicable to the present case. Counsel for the Commission finds comfort in the fact that in In Re Theriot this Court ruled in *149 favor of the Commission on both the procedural and substantive issues. Despite the fact that Theriot did not have the facts sufficient to prove his allegations, the legal pronouncements of this Court arc no less valid.
In In Re Theriot, supra, we interpreted LSA-R.S. 42:1121(D)(5), which affords substantially the same rights now found in LSA-R.S. 42:1141(D)(6), to'mean that a subject of any hearing:
"... has the right to full representation by counsel, to cross examine witnesses against him and.to present evidence on his own behalf at all adversary hearings, public and private. We do not believe that he is entitled to participate in his own investigation or be present at meetings of the Commission at which the results of such an investigation might be revealed. He is entitled to these rights only at adversary hearings, and we do not believe that the meetings of the Commission or investigations carried out by the Commission personnel fall within this category. A hearing contemplates the reception of primary evidence, testimonial or otherwise, rather than the hearsay results of an investigation."

. The Commission argues that In Re Coppola has been legislatively overruled by LSA-R.S. 42:1141(D)(6). In In Re Coppola this court interpreted the existing provision of LSA-R.S. 42:1121(D)(5) which read as follows:
"Any slate employee or other person who is the subject of any investigation or hearing, public or private, shall have the right to legal counsel, the right to cross-examine witnesses, and the right to call witnesses and present evidence in his own behalf.” (Emphasis added)
*150 In contrast, the new provision provides:
"Any public servant or other person who is the subject of any hearing may have legal counsel, cross examine witnesses, and present evidence in his own behalf.” (Emphasis added)
Counsel for the Commission aptly points out that, under the old law, full due process rights were afforded to subjects of hearings or investigations, while the new law affords full due process rights only to subjects of hearings. This revision of the law, however, does not overrule In Re Coppola insofar as it applies to hearings.